Judgment for the defendants.

[New York Special Term, May 2, 1857.   *Davies,* Justice.]

— • ○ • —

Grant *vs.* Courter, comm'r &c. of the town of Cobleskill.

The act of the legislature, authorizing the towns in the counties through which the Albany and Susquehanna rail road is located, and in progress of construction, to borrow money, and subscribe for, and purchase, the stock of the company, with the view of aiding in the completion of the work, is not repugnant to any *express* provisions of the constitution; nor is a prohibition upon the power exerted by the legislature to be necessarily *implied* from the provisions of that instrument.

The power exercised was within the general grant of legislative authority, and the act is a valid and binding law.

That act does not *deprive* any citizen of his property, nor *take* private property for public use, within the meaning of the constitution.

The meaning of the word *deprived,* as used in § 6 of art. 1, of the constitution, is the same as the word *taken,* in the same section; and when property is not seized and directly appropriated to public use, though it be subjected, in the hands of the owner, to greater burdens than before, it is not *taken* contrary to § 6.

Grant *v.* Courter.

Where a duty, in respect to a particular thing, is enjoined by the constitution upon the legislative branch of the government, and the mode of doing it is left exclusively to legislative discretion, even though the authority may have been previously exercised by the legislature, no limitation is thereby set to legislative power; nor can an intention be implied, on the part of the framers of the constitution, or the people who adopted it, to restrict the law-making department in the manner of discharging the duty.

An act granting power, to be exercised upon such conditions as the legislature impose, is not a delegation of legislative authority, nor is it invalid

IN March, 1856, an act was passed, entitled "An act to authorize any town in the counties of Schenectady, Schoharie, Otsego, Delaware, Chenango or Broome to subscribe to the capital stock of the Albany amd Susquehanna Rail Road Company." (*Laws of* 1856, *ch.* 64.) The act provides among other things, that the commissioner in any of the towns in the counties aforesaid, shall borrow on the faith and credit of such town, provided the consent in writing of two-thirds of the tax payers, representing two-thirds of the taxable property in said town, appearing upon the last assessment roll, shall first be obtained, proof of which shall be by affidavit, filed in the town and county clerk's office, any sum not exceeding $100,000, for a term not exceeding twenty-five years, at a rate of interest not exceeding 7 per cent per annum, and to execute bonds therefor under his hand and seal. It is further provided that the commissioner may, in his discretion, dispose of such bonds to such persons or corporations and upon such terms as he shall deem most advantageous to said town, but for not less than par, and the money that shall be raised by any loan or sale of bonds shall be invested in the stock of the Albany and Susquehanna Rail Road Company, and the said money shall be applied and used in the construction of such rail road as aforesaid, and its buildings and necessary appurtenances, and for no other purpose whatever; and for that purpose the commissioner, in the corporate name of said town, may subscribe for and purchase stock of said company, to the amount thus provided for, and by virtue of said subscription; and upon receiving a certificate for the amount of said stock so subscribed, the said town shall acquire

all the rights and privileges, and be liable to the same responsibilities as other stockholders of said company.

It was further provided that the commissioner should report to the board of supervisors of the county wherein said town is located, within three days after the commencement of their regular annual session in each year, the amount necessary to pay the principal, or the interest, if any, on the bonds authorized to be issued. The dividends arising from the stock to be received by such commissioner and applied to the payment of the principal and interest which shall from time to time become due upon said bonds; and in case such dividends should not be sufficient to pay the principal and interest accruing on the bonds, it was made the duty of the board of supervisors to cause to be assessed, levied and collected upon the real and personal estate of said town, such sum or sums of money as shall have been reported to the board, which shall be necessary to make good such deficiency in the payment of the principal and interest upon said bonds.

The commissioner was also to provide, within five years from the time of issuing such bonds, for the annual payment of at least five per cent of the same, and for that purpose, should first apply the dividends, if any, or if not sufficient, the balance to be levied and collected as aforesaid, as a sinking fund for the ultimate redemption of the bonds. The commissioner was also authorized after acquiring such stocks to exchange the same in whole or in part for said bonds, or sell the same for cash, but for not less than par, except at public sale, of which notice should be given in two newspapers published in the county wherein such town is located, and in case of sale of said stock either at public or private sale, the proceeds thereof should be applied to the purchase or redemption of the bonds authorized to be issued by the act, and to no other purpose whatever.

The consent in writing of two-thirds of the tax payers representing two-thirds of the taxable property of the town of Cobleskill, in the county of Schoharie, upon the last assessment roll, was duly obtained, and proof thereof by the affidavit of the commissioner duly filed, as required by the terms of the

Grant v. Courter.

act, authorizing the commissioner to borrow on the faith and credit of the town the sum of $60,000 for a designated term, not exceeding 25 years, and at a designated rate of interest not exceeding 7 per cent per annum, and to execute bonds therefor, in conformity to the provisions of the act, and the commissioner proposes to borrow that amount on, or dispose of the bonds to be issued by him therefor, in accordance with the terms of the act, and invest the avails in stock of the Albany and Susquehanna Rail Road Company, to be applied and issued as therein directed. All the provisions and conditions contained in the act have been fulfilled.

Other towns in the counties mentioned in the act, are expected to subscribe to said stock in pursuance of said act, to the amount in all of $1,000,000, which with the individual subscriptions, and other means of the company, will be sufficient to build and equip the road. The company have expended upon the road between $200,000 and $300,000; they have obtained and paid for large and commodious depot grounds at Albany and Binghamton, and secured, free of all incumbrances, over 100 miles of the right of way. The whole distance (140 miles) has been surveyed and located, and about 25 miles of the most expensive portions are now graded, ready for the rails, and a considerable part of the mason work has been completed. All the towns along the line of the road, including Cobleskill, have a direct and immediate interest in the construction of the road, and it can be built at as small an expense as any other, for a corresponding distance, in the state. The portion of the state through which it is to pass, embraces an area of more than 4000 square miles, mainly off from the route of rail roads, and of canals or other navigable communications, without the facilities for intercourse with leading commercial marts, and for the sale of the products of agricultural and mechanical industry, common to other portions of the state. The construction of the road would greatly increase the value of the land along the entire line, and add largely to the aggregate of the taxable property of the several towns and counties through which it is to pass. It is conceded that the construction of the road will

greatly augment the aggregate wealth of the state, and that it will open to a large and populous region, now comparatively insulated, a direct communication with the capital, which has become indispensable to the convenience as well as the business interests of the citizens of this section of the state. The plaintiff, a tax payer of the town of Cobleskill, claims that the act of the legislature in question is unconstitutional and void, and prays that it may be thus adjudged, and that the defendant, as commissioner of the town of Cobleskill, be restrained from borrowing money on the faith or credit of the town ; from executing bonds therefor ; and from subscribing for, or purchasing in the name of the town, any stock in the Albany and Susquehanna Rail Road Company. The defendant, the commissioner of the town of Cobleskill, on the contrary insists that the act in question is free from constitutional objection ; that the same is in full force and effect as a valid and binding law, and that the plaintiff is not entitled to the relief demanded or any part thereof.

*Wm. J. Hadley,* for the plaintiff.

*John K. Porter,* for the defendant.

*By the Court,* W. B. WRIGHT, P. J.   The question submitted for our consideration is the constitutionality of the act, authorizing the towns in the counties through which the Albany and Susquehanna Rail Road is located, and in progress of construction, to borrow money and subscribe for and purchase the stock of the company, with the view of aiding a work, in a certain sense, a public improvement. (*Laws of* 1856, *ch.* 64.) The contemplated road running as proposed, through a populous though comparatively insulated region of the state, may be regarded as a work of public necessity ; and it may well be, that from causes other than a distrust in the future profitableness of the enterprise, private capitalists have not promptly embarked their means.   Yet regarding the question as one of expediency merely, serious doubts may well be entertained of the policy and wisdom of a town in a mainly agricultural county,

Grant *v.* Courter.

where there is no unusual concentration of wealth, burdening itself even temporarily with a debt, and becoming a stockholder in a rail road corporation. Still, this question of expediency is not for us to determine. It pertains exclusively to the legislature. It has been definitively settled, by authorizing the towns both to incur the debt, and become stockholders. All that is left for our consideration is the question of legislative power.

It is not to be doubted that the legislature may empower a town to subscribe to the stock of a rail road company, with the intent of aiding in the construction of a work of conceded necessity to its inhabitants, and calculated to augment the value of its taxable property, unless the power be expressly, or by plain and necessary implication, withheld by the constitution. Any restriction upon the legislative authority, in this respect, is to be found in the organic law, or it has no existence. I am aware that what is called the natural right of the citizen, is sometimes invoked as a limitation or restraint on the law-making power. But this, under our theory of municipal government, is a fanciful and unreal restriction. The highest exercise of sovereignty, that of law-making, has been delegated to a senate and assembly. Each citizen, or member of the government, is a party to this delegation of power, insomuch that the people themselves cannot, in any other way, exercise the sovereignty. The people have invested a branch of the government with all the sovereignty they possessed themselves, in this respect, with only such limitations on its exercise, as they have thought wise to impose in the fundamental law. Nothing of the power has been retained, except so much as the people have evinced an intention to retain by express provisions of the constitution, or chart of goverment, or to be necessarily implied from that instrument. The act in question, therefore, is the fruit of the legitimate exercise of legislative power, unless repugnant to express provisions of the constitution, or such as are plainly and necessarily to be implied from it. It is urged that it is repugnant to the *spirit* of three distinct sections of articles seven and eight of the instrument; but an otherwise valid exercise of the law-making power cannot be unconstitutional, for the reason that the law is

antagonistic, in spirit, to certain provisions of the constitution, provided it be not in direct or necessary conflict with them.

The counsel for the plaintiff, starting with the assumption that the act appropriates, without just compensation, private property to a use either public or private, contends, that in this view, it is repugnant to those provisions of the constitution designed to guard the citizen against a deprivation of his property without due process of law, and which restrain the taking of private property for public use, without just compensation. (*Const. art.* 1, § 6.) He is, however, met at the outset, with the objection, that the statute in question does not *deprive* any citizen of his property, or *take* private property for public use, within the meaning of the constitution. A statute authorizing a town, in its corporate capacity, to borrow money on its credit, and with the avails to purchase and hold the stock of a rail road company, which road is a public improvement, designed for the public use, and in which the inhabitants of the town itself are to be especially benefited, even though the act contemplate, in a contingency, taxation to reimburse the debt, is in no constitutional sense, depriving a resident of the town of his property, or taking it for a public use, without just compensation. The citizen is not deprived of his property, nor is any taken from him for the public use, nor is the property of the local tax payer affected, except contingently and remotely. It is by taxation alone that harm can ever come to any person. I concur with the court in *Sharpless* v. *Mayor &c. of Philadelphia,* (9 *Harris,* 149,) that the meaning of the word *deprived* as used in § 6, of article 1 of the constitution, is the same as the word *taken* in the same section ; and that when property is not seized and directly appropriated to public use, though it be subjected in the hands of the owner to greater burdens than before, it is not *taken* contrary to § 6. But the act imposes no tax. It is a mere grant of power to a corporate body to borrow money and apply it to a public purpose, which the legislature approves. If instead of authorizing the towns to borrow money, it had empowered them to raise it by taxing themselves for the purpose of opening the thoroughfare, I think it would have been equally free from

Grant *v.* Courter.

any constitutional objection. The exercise of the power of eminent domain and of taxation belong exclusively to the legislature. The latter is a legislative right and duty, to be exercised by the legislature or under the authority of laws passed by them, and limited only by their discretion. We are to be understood, of course, as referring to taxation for a public purpose, in which the community that pays the tax has an interest. If the Albany and Susquehanna rail road was a mere private affair, and the locality proposed to be taxed for its construction could have no possible interest in such construction, a more serious question of legislative power might arise. But it is a public improvement, which the state, to advance the commerce or promote the welfare of the people, might itself undertake, and declining to do it, permit it to be done by a company. The fact that it is done by a private corporation does not divest it of the character of a public work; nor, does the right of the corporation constructing it, to be compensated by the exaction of tolls for the transportation of freight and passengers upon it, extinguish the interest of the public, or make the work a merely private one. That insulated section of the state through which the contemplated rail road is to pass, and upon which' taxation to aid in the construction might, in a contingency, ultimately fall, cannot be truly said to have no interest in the work. It is a local improvement, public in its character, to enure to the benefit of the locality from its use, in advancing its commerce, and augmenting its resources and wealth. It is a work which the state might aid in the execution of, by either delegating the right of eminent domain, or by an exercise of the taxing power. It is an improvement of such a nature and character, as the state has uniformly aided by delegating the exercise of the right of eminent domain, and not unfrequently by resorting to the power of taxation. There is nothing in the constitution prohibiting the legislature from exerting the taxing power for a public purpose upon a particular district or locality, or taking away from the legislative discretion the mode in which it shall be exerted. As was said in *The People* v. *Mayor &c. of Brooklyn*, (4 *Comst.* 419,) the remedy against unwise or unjust modes of taxation, is to be

sought from the legislative department of the government, and not from the judiciary.

The act, consequently, is not repugnant to the provisions of the state constitution above referred to, nor is it without the general grant of legislative power. The precise question at issue as to the power of the legislature to authorize towns, cities and counties, to subscribe for rail road, turnpike road, or bridge stocks, has been decided repeatedly in various states of the union, and the final decision in each of them, has upheld the law as constitutional. The constitutions of several of these states contain similar provisions for the protection of private property to those above alluded to. The only case in contradistinction to which we have been referred is that of *Clark* v. *The City of Rochester,* (13 *How. Pr. R.* 204,) decided at special term ; and in which Judge Allen, in his able opinion, rests the decision in part upon other grounds, to which allusion will hereafter be made. (*Sharpless* v. *Mayor of Philadelphia,* 21 *Penn. R.* 147. *Commonwealth* v. *McWilliams,* 11 *id.* 62. *The Cincinnati &c. R. R. Co.* v. *Commissioners of Clinton Co.,* 21 *Ohio R.* 77. *Cass* v. *Dillon,* 22 *id.* 607. *Talbot* v. *Dent,* 9 *B. Mon. R.* 526. *Slack* v. *The Mayville R. R. Co.,* 13 *id.* 1. *Nicoll* v. *Mayor of Nashville,* 9 *Humphrey,* 252. *Ryder* v. *Alton R. R. Co.,* 13 *Illinois R.* 516. *Shaw* v. *Dennis,* 5 *Gilman,* 405. *City of Bridgeport* v. *Housatonic R. R. Co.,* 15 *Conn. R.* 475. *Goddin* v. *Cramp,* 8 *Leigh,* 120. *Harrison Justices* v. *Holland,* 3 *Grattan,* 247. *Taylor* v. *Comm'rs of Newbern,* 2 *Jones,* 171. *See also Thomas* v. *Leland,* 24 *Wend.* 65 ; *People* v. *Mayor of Brooklyn,* 4 *Comst.* 419 ; *White* v. *The Syracuse and Utica R. R. Co.,* 14 *Barb.* 559.)

It is further urged that the law is opposed to the *spirit* of article 8, sec. 9 of the constitution, which enjoins the duty upon the legislature to restrict cities and incorporated villages in their power of taxation, in contracting debts, and in loaning their credit. In *Clark* v. *The City of Rochester,* Judge Allen held, that by a plain and necessary implication, arising from the terms of the section, the legislature was prohibited from conferring enlarged powers upon cities and incorporated villages, to

tax property, or loan their credit. It might perhaps be properly urged, that if the section, by implication, prohibits that species of legislation designed to enlarge the taxing power, and the power to loan the credit of cities and incorporated villages, the exercise by the legislature of the power under consideration, would not be affected by it. The act in question does not assume to extend the taxing power of cities and incorporated villages, as such, or their power of contracting debts. In terms, it has no relation to cities or incorporated villages, as such, but is confined exclusively to enlarging the capacity of those municipal organizations, or *quasi* corporations, denominated towns. But let this pass. The section is manifestly no restriction, in terms, upon legislative power; and it is only by a process of reasoning, more subtle than sound, that any prohibition is to be implied from its provisions. All that the clause of the constitution imposes on the legislature, is the duty of restricting the municipal corporations named therein, in their power of taxation, borrowing money, contracting debts, and loaning their credit, pre-supposing, and admitting, that the subject was entirely within legislative cognizance. No restraint upon legislative power, in this respect, was intended; nor can any be legitimately or necessarily implied. Instead of restraining legislation, by which city and village taxation for local purposes was authorized, it recognizes and affirms its validity, and refers the subject to the legislature to correct any abuses that may have grown out of the exercise of the power, under legislative authority, by municipal governments. The restriction contemplated was meant to be exclusively under legislative discretion and control, and to be effected by statute, and not by the organic law. Where a duty in respect to a particular thing is enjoined by the constitution upon the legislative branch of the government, and the mode of doing it is left exclusively to legislative discretion, even though the authority may have been previously exercised by the legislature, no limitation is thereby set to legislative power, nor can an intention be implied on the part of the framers of the constitution, or the people who adopted it, to restrict the law-making department in the manner of discharg-

ing the duty.   No just or logical implication can arise, that in the section under review, it was intended to restrain the legislature, when dealing with the subject of municipal power, from conferring upon municipal governments new and enlarged powers; in respect to taxation, and the creation of debts, if, in its wisdom, good government and the welfare and interests of the community to be affected, were to be thereby promoted.

There is no force in the ground that the act is unconstitutional for the reason, that its adoption as a law was made to depend upon the consent being first obtained, of two-thirds of the tax payers, representing two-thirds of the taxable property of the town.   This is not true, in fact, as will appear from an examination of the statute.   Its adoption as a law was not made to depend upon the will of any person, or body, other than the legislature.   No extraneous power, unrecognized by the constitution, was called in, or invoked, to give it being as a law.   It was the emanation exclusively of the legislative will; and was perfect, final, and decisive, in all its parts, when it came from the hands of the law-making department.   It was a grant of power, taking effect as a law, without reference to the question, whether the towns availed themselves of its provisions, or otherwise.   It authorized the towns to borrow money, provided the consent of two-thirds of the tax payers, representing two-thirds of the taxable property of the towns, was first obtained; but this condition, or restraint, upon the exercise of the power conferred, was imposed by the legislature, and was as much the unaided emanation of its will, as the conferring of the power itself.   An act granting power, to be exercised upon such conditions as the legislature impose, is no delegation of legislative authority, nor is it invalid.   (*Moers* v. *City of Reading,* 21 *Penn. R.* 189. *Cincinnati R. R. Co.* v. *Commissioners of Clinton County,* 21 *Ohio R.* 77.)

The act, therefore, is not repugnant to any express provisions of the constitution, nor is a prohibition upon the power exerted by the legislature, to be necessarily implied from the provisions of that instrument.   The power exercised was within the general grant of legislative authority.   Each town, as a body corpo-

rate, has capacity to contract, to acquire property, and to exercise such other powers as may be conferred by law. The legislature could authorize a town, at its own election, to borrow money, and apply it to a public purpose beneficial to itself and useful to the state ; and if the corporate capacity and power to do this did not previously exist, no constitutional objection intervening, it could be rightfully conferred by the law-making branch of the government.

We are of the opinion, that the passage of the act was not an unconstitutional exercise of legislative power ; but, on the contrary, that it is in full force and effect, as a valid and binding law.

There must be judgment for the defendant.

[ALBANY GENERAL TERM, May 4, 1857. *Wm. B. Wright, Harris* and *Gould,* Justices.]