Blanding *v.* Burr.

THE PEOPLE *ex rel.* BLANDING *v.* BURR *et als.* CONSTITUTING THE BOARD OF FUND COMMISSIONERS UNDER THE ACT OF APRIL 20, 1858.

THE Legislature may authorize a municipal corporation to pay claims invalid in law, but equitable and just in themselves.

The only limitation upon the taxing power of the Legislature is the provision for equality and uniformity found in the 13th Section, of Article 4th, of the Constitution.

The Legislature can impose a general tax upon all the property of the State, or a local tax upon the property of particular political sub-divisions, as counties, cities, and towns. The cases in which its power shall be exercised, and the extent to which the taxation in a particular instance shall be carried, are matters exclusively within its own judgment, subject to the qualifications of equality and uniformity in the assessment. And, except as especially restricted, its power of appropriation of the moneys raised, is co-extensive with its power of taxation. It may appropriate them to claims which have no legal obligation, and are founded only in justice. The power of appropriation which the Legislature can exercise over the revenues of the State for any purpose, which it may regard as calculated to promote the public good, it can exercise over the revenues of a county, city, or town, for any purpose connected with their present or past condition, except as such revenues may, by the law creating them, be devoted to special purposes. In creating the law imposing the tax, it can prescribe the objects to which the money raised shall be applied. It is only for the convenient administration of the government that the State is divided into counties, cities, and towns.

The powers of a municipal corporation may be increased, restricted, or repealed, by the Legislature at will, saving only vested rights.

The fact that the Legislature has once exercised its powers in limiting the extent of taxation in municipal corporations, under the 37th Section, of Article 4th of the Constitution, does not prevent the Legislature from again exercising its power by enlarging the authority to tax.

The Act of April 20th, 1858, authorizing the issuance of bonds by the city and county of San Francisco, is valid.

The clause in the Act, requiring the action of the Board of Examiners to be submitted to a vote of the people in a contingency, does not make the Act any the less a law. The Act took effect as a law immediately, and was not dependent on the action of any other body.

Laws may be absolute, dependent upon no contingency, or they may be subject to such conditions as the Legislature, in its wisdom, may impose. They may take effect only upon the happening of events which are future and uncertain; and among others, the voluntary act of the parties upon whom they are designed to operate.

THE case is stated in the opinion of the Court.

*Hoge & Wilson,* for Appellants.

I.   The Act of April 20, 1858, is constitutional.

1.   The 37th Section, of Article 4th, of the Constitution, is not a limitation upon the power of the Legislature. (*Grant* v. *Courter,* 24 Barb. 240; *Cook* v. *City of Rochester,* Id. 487 ; *People* v. *Mayor of Brooklyn,* 4 Comst. 440.)

2.   The Act is a mere exercise of the taxing power. (*Thomas* v. *Leland,* 24 Wend. 66; *Town of Guilford* v. *Supervisors of*

*Chenango*, 3 Kern, 143; *Same case*, 17 Barb. 615; *First Munici-pality of New Orleans* v. *Orleans Theater Company*, 2 Robinson, La. 209; *Shaw* v. *Dennis*, 5 Gilman, 415; *City of Bridgeport* v. *Hous. R. R. Co.* 15 Conn. 492; *Inhabitants of Norwich* v. *County Commissioners of Hampshire*, 13 Pick. 60; *Truchalut* ads. *City Council of Charles*, 1 Nott. & McC. 227; *People* v. *Mayor of Brooklyn*, 4 Comst. 419; *Wilson* v. *Leland*, 2 Peters, 661, 662; Id. 412; *Cass* v. *Dillon*, 2 Ohio, 613; *Morris* v. *The People*, 3 Denio, 392; *Grant* v. *Courter*, 24 Barb. 237; *Benson* v. *Mayor of Albany*, Id. 248; *Clark* v. *City of Rochester*, Id. 446; *Sharpless* v. *Mayor of Philadelphia*, 21 Penn.—particularly opinion of Judge Woodward; *Moers* v. *City of Reading*, Id. 188; *R. R. Co.* v. *Commissioners of Clinton County*, 1 Ohio, 7; Id. 134; *Slack* v. *M. and L. R. R. Co.* 13 B. Mon. 1; *People* v. *Williams*, 8 Cal. 101; *McDonald* v. *Griswold*, 4 Cal. 352; *Burnett* v. *Mayor, etc. of Sacramento*, 12 Cal. 76; *Hunsacker* v. *Borden*, 5 Cal. 288; *State, to use of Washington County* v. *B. & O. R. R. Co.* 12 Gill & Johns. 436, affirmed in 3 Howard, 534.)

II.   The municipal government of San Francisco is a mere creature of the Legislature, subject to the entire control of that body.   The State is divided, in the administration of government, into counties, towns, cities, and incorporated villages. To these various political subdivisions the State, for the purpose of government, delegates many of her powers.   They all bear the same relation to the State, and are equally within her control.   (*C. W. & Z. R. R.* v. *Commr's Clinton Co.* 1 Ohio, 89; *People* v. *Morris*, 13 Wend. 337; *People* v. *Mayor of N. Y.* 25 Wend. 680; *People* v. *Draper*, 25 Barb. 370.)

III.   The whole subject of taxation belongs to the Legislature alone.   Its exercise cannot be controlled by the Courts:   In the absence of constitutional restriction, the taxing power is unlimited and reaches the whole property of the State.   The Legislature may levy and apportion a tax upon any particular locality or division of the State, and is the exclusive judge of the propriety and justice of its own actions.   It may recognize claims which cannot be enforced at law, and may provide for their payment by taxation upon any of the political subdivisions, according to its own notions of justice and of public benefit.

Blanding *v.* Burr.

IV. As to the assumption that the Act of 1858 is not in itself a law, but a mere proposition, to be submitted to the people, as to whether it should take effect or not as a law, we say, the assumption is not true. The Act is not submitted to the people at all, nor is any provision of it, nor is its validity in any way made to depend upon a vote of the people. It is the report of the Board of Examiners that is to be submitted to the people, if demanded. The question whether bonds should be issued in accordance with the report of the Board of Examiners, and no other, may be submitted to a vote. This particular law, therefore, is not within the principle contended for by the counsel. But there is nothing in the point itself. (*Grant* v. *Courter*, 24 Barb. 242; *Clark* v. *City of Rochester*, Id. 468; *Moers* v. *City of Reading*, 21 Penn. 202; *Cinn. Wilm. and Zanesville Railroad* v. *Comm'rs of Clinton Co.* 1 Ohio, 87; Hitchcock's Opinion, 20 Ohio Append.; *Stack et al.* v. *Mayor and Lexington R. R. Co.* 13 B. Mon. 23; *People* v. *Reynolds*, 5 Gil. 10.)

*Wm. Blanding*, also, for Appellants.

I. The Act in question is substantially a Funding Act, such as has been sanctioned in England and America, and particularly in California. (*Washington* v. *Page*, 4 Cal. 389; *People ex rel. Tallant* v. *Board of Supervisors of San Francisco*, 12 Id. 300; *People ex rel. Tallant* v. *Tillinghast*, 10 Id. 584; *People ex rel. Lane* v. *Bond*, Id. 563; *People ex rel. O'Donnell* v. *Board of Supervisors San Francisco*, 11 Id. 206.)

II. The Legislature has power to levy a tax to pay these bonds. (*McCulloch* v. *The State of Maryland*, 4 Wheat. 316; *Nogues* v. *Douglass*, 7 Cal. 65; *Town of Guilford* v. *The Board of Supervisors of Chenango Co.* 3 Kern. 143; *Shaw* v. *Dennis*, 5 Gil. 405; *Thomas* v. *Leland*, 24 Wend. 65; *City of Bridgeport* v. *Hous. R. R. Co.* 15 Conn. 475.)

*Yale*, for Respondents.

I. The Act of the 20th of April, 1858, was not in itself a law, passed by the Legislature; nor was it merely to take effect upon the happening of an event, dependent upon a certain condition; but was a mere proposition, to be submitted to the people under a certain condition, as to whether it should take effect or not as

a law. (*Barto* v. *Himrod*, 4 Seld. 483; *Johnson* v. *Rich*, 9 Barb. 680.)

II.   The terms of submission to the vote of the people were accompanied by an illegal condition.   The submission was made to depend upon the will of five hundred electors, whose names should be found upon the assessment-roll as tax-payers.   This is, in effect, submitting the question to five hundred men.

III.   The main ground of refusal rests upon the illegality of the claims passed by the Board of Examiners upon which bonds are demanded, and the want of power in the Legislature to render them valid against the corporation or against the tax-payers.

1. It was made the duty of the Legislature, under the Constitution, to restrict the corporation of San Francisco from the creation of a debt beyond the amount limited in the charter. (Const. Art. 4, Sec. 37.)

2. The Legislature performed that duty, and it then became as obligatory as a constitutional provision, incorporated in the Constitution.   (Charter of 1851, Art. 3, Sec. 5; Charter of 1855, Sec. 32.)

3. All debts contracted beyond the sums fixed in the Charters as the maximum, are absolutely void, under the Constitution and Charter.   And being void, the Legislature could not make them valid.   (*Ketchum* v. *City of Buffalo*, 4 Kernan, 356, 376, 379; *Moore* v. *Patch*, 12 Cal. 265; *People* v. *O'Donnell*, 11 Id. 206; *People* v. *Johnson*, 6 Id. 499; *Nogues* v. *Douglass*, 7 Id. 65; *Dennis* v. *Maynard et al.* 15 Ill. 480.)   The Legislature cannot dispose of the property of the Corporation, and vest it in the State.   (*Territt et al.* v. *Taylor et al.* 9 Cranch, 52; *Morse* v. *Smith*, 2 Cal. 554; *Hampshire* v. *Franklin*, 16 Mass. 84; *Newall* v. *The People*, 3 Seld. 9; *Wells* v. *City of Weston*, 22 Missouri, 387.   For English Funding System see McCullock's Com. Dic. 689, and Encyclopedia of Commerce, Vol. 1, 763, Title Funds, by I. Smith Hamans.)

4. Upon general principles contracts in violation of a statute are void, so that all these claims certified to be bonded are independent of the constitutional restriction.   (*Rodman* v. *Munson*, 13 Barb. 63; *Newall* v. *The People*, 3 Seld. 9; *Bell* v. *Quinn*, 2 Sand. 146.)

5. The provisions in the Constitution and Charters of 1851

and 1855, limiting the creation of the debt, constituted a contract with the tax-payers, during the existence of those Charters, that they should not be called on to pay a larger tax for the city indebtedness than authorized by the Charters, which contract the Act of 1858 violates, by the imposition of an additional tax to pay for the excess. (See the general principle stated in *New Jersey* v. *Wilson*, 7 Cranch, 164; and *State Bank of Ohio* v. *Knoops*, 16 How. 369.) The law could not have a retroactive operation.

6. The operation of the Act of 1858, is to take the property of the tax-payers of the city, without due process of law, and to appropriate it to another for a private purpose.

FIELD, J. delivered the opinion of the Court—TERRY, C. J. concurring.

This was a proceeding to obtain a peremptory *mandamus* upon the Respondents, constituting the Board of Fund Commissioners, under the Act of April 20, 1858, to compel them, in compliance with the provisions of the Act, to issue to the relator bonds of the city and county of San Francisco for the amount of his claim, as allowed by the Board of Examiners. Two of the Respondents—the Auditor and Treasurer of the city and county—in their return to the alternative writ, avow their readiness to issue the bonds in conformity with the Act, but allege that the Respondent Burr, the President of the Board, refuses to sign them, and that they cannot be issued without his signature. The Respondent Burr, in his return, bases his refusal on the alleged illegality of the claims allowed by the Board of Examiners against the city of San Francisco, and the alleged want of power in the Legislature, by the Act in question, to give them validity, and to render them binding upon the corporation.

No objection is taken to the regularity of the action of the Examiners. It is admitted that they conformed in all respects to the provisions of the Act, and discharged their duties with strict impartiality and faithfulness. No claim was approved by them which was not evidenced in the required form, or founded upon a valuable or meritorious consideration. The illegality alleged is, that the claims were created in contravention of express prohibitions in the charters of 1851 and 1855. The char-

ter of 1851 vests the government of the city in a Common Council, consisting of a Board of Aldermen and a Board of Assistant Aldermen; and in the 5th Section of Article 3d provides as follows:

"The Common Council shall not create, nor permit to accrue, any debts or liabilities which, in the aggregate with all former debts or liabilities, shall exceed the sum of fifty thousand dollars over and above the annual revenue of the city, unless the same shall be authorized by ordinance for some specific object, which ordinance shall provide ways and means, exclusive of loans, for the payment of the interest thereon as it falls due, and also to pay and discharge the principal within twelve years; but no such ordinance shall take effect until it shall have been submitted to the people and receive a majority of all the votes cast at such election; and all money raised by authority of such ordinance shall be applied only to the object therein mentioned, or to the payment of the debt thereby created; *provided*, that the present debt of the city, with the interest accruing thereon, shall make no part of the fifty thousand dollars aforesaid."

The charter of 1855, in like manner, vests the government of the city in a Common Council, consisting of similar Boards, and in its thirty-second section provides, that "the Common Council shall not create, nor permit to accrue, any debt or liability which, in the aggregate with all former debts or liabilities, exclusive of the funded debts, shall exceed the sum of twenty-five thousand dollars over and above the estimated annual revenue of the city at the time of incurring such debt or liability," and contains various clauses intended to give effect to this prohibition.

These provisions are construed by the counsel of the Respondents as a legislative restriction upon the powers of the municipal government, fixing a limit beyond which it could not go in the creation of any debt or liability; and hence it is argued that all claims exceeding this limit are without legal obligation, and consequently incapable of confirmation by legislative enactment. It is not necessary for the determination of this proceeding to give a construction to these provisions, for, assuming the construction of the learned counsel to be correct, and that the claims were without legal obligation, we cannot perceive any

constitutional objection to their recognition by the Legislature as a just debt to be assumed by the city. The claims approved were not created for purposes outside of the charters, but for objects warranted by them; and it is not pretended that they were not founded upon considerations which would be deemed valuable and sufficient as between individuals. The objection to the claims is not to their character, but to their amount. By the Act of April 20th, 1858, the Legislature has provided for a change in their form, and their ultimate payment by the city.

The act provides that bonds shall be issued to the holders of the approved claims, (upon the surrender of such claims for cancellation,) in the name of the city and county, be signed by the Commissioners in their official capacity, bear date as of the first of January, 1858, draw interest at the rate of six per cent. per annum, and be redeemable and payable within thirty years from their date, and that an annual tax shall be levied for the payment of the interest, and after 1866 a further annual tax for the creation of a sinking fund for the extinction of the principal. The effect of the act is to give to numerous outstanding claims a common form, and to convert a present liability, real or asserted, into a deferred debt, and to provide a fund for its extinguishment. The question presented, is not one of power in the Legislature to impose upon the corporation the payment of claims for which no consideration has been had, but of power to provide for claims meritorious in their character, for which an equivalent has been received, and from the payment of which the corporation could only escape upon strict technical grounds. That the Legislature can provide for the payment of claims, invalid in the forum of the law, but equitable and just in themselves, would seem unquestionable. It may become, for example, of the highest importance to a municipal corporation that counsel should be employed to defend its rights of property assailed by different parties, but its charter may not confer authority to employ the counsel or to meet his charges. Professional services rendered under such circumstances, would not constitute a legal charge upon the corporation, but that it would be competent for the Legislature to authorize the payment of the charge, and the imposition of a tax for that purpose, no one will deny. Or, take a still stronger case—a city has issued, in pur-

suance of law, its bonds—the annual interest is maturing, and the sources of revenue upon which it relied to pay the same have failed, and it has no power to borrow the money within the requisite time, but individuals possessing the means come forward, and at the request of its authorities, advance the necessary money to protect the honor and good faith of the city. A claim for reimbursement would not, under the circumstances, in face of positive prohibitions of the charter to raise money, except in a particular way, be valid and binding, but that the Legislature could authorize its payment, and the raising of the means by taxation without trenching upon any constitutional restrictions, is clear. The action of the Legislature in reference to the approved claims under the Act of April 20th, 1858, is of a similar character, and must rest for its validity upon similar grounds. There is nothing in the act compulsory upon the holders of the approved claims; they are not bound to surrender them and receive bonds in their place; this is entirely optional with them. The act, therefore, impairs no right which they may have possessed heretofore, even were the claims valid and binding upon the city. In that view the act is of a beneficial character to the holders in the available form of the claims it furnishes, and in the security it gives for their ultimate payment; much more so upon the assumption with which we are considering the case, that the claims never possessed any legal obligation. The question then, is, whether the direction to levy an annual tax for the interest, and, after 1866, for the principal of these bonds, was a legitimate exercise of the taxing power of the Legislature.

The only limitation upon this power is contained in the 13th Section of the 11th Article of the Constitution, which simply provides for equality and uniformity in the taxation. There is no restriction as to the amount of the tax which may be imposed, or the purposes to which the money raised shall be applied. The security against the abuse of the power of the Legislature is to be found in the wisdom and sense of justice of its members, and their relation to their constituents. It can impose a general tax upon all the property of the State, or a local tax upon the property of particular political subdivisions, as counties, cities, and towns. The cases in which its power shall

be exercised, and the extent to which the taxation in a particular instance shall be carried, are matters exclusively within its own judgment, subject to the qualifications of equality and uniformity in the assessment.   And, except as especially restricted, its power of appropriation of the moneys raised, is coextensive with its power of taxation.   It may appropriate them to claims which have no legal obligation, and are founded only in justice.   Of the propriety of the appropriation, as of the expediency of the taxation, it is the sole judge.   With the exercise of the power in either case, the judiciary cannot interfere.   The power of appropriation which the Legislature can exercise over the revenues of the State for any purpose, which it may regard as calculated to promote the public good, it can exercise over the revenues of a county, city, or town, for any purpose connected with their present or past condition, except as such revenues may, by the law creating them, be devoted to special purposes.   In passing the law imposing the tax, it can prescribe the objects to which the moneys raised shall be applied.   It is only for the convenient administration of the government, that the State is divided into counties, cities, and towns.   These political subdivisions are mere instrumentalities, with powers more or less enlarged according to the requirements of the public.   Their powers are subject to be increased, restricted, or repealed, at the will of the Legislature, according to the varying exigencies of the State; vested rights acquired thereunder, as under all laws, only, remaining unaffected.   In directing, therefore, a particular tax by a municipal corporation, and the appropriation of the proceeds, the Legislature, only exercises a power through its subordinate agent, which it could exercise directly.   In creating the corporation, or by subsequent legislation, it could authorize specific taxes for specific purposes; as, for instance, for the salaries of its Mayor or Supervisors.   The character of the purpose—when there is no constitutional inhibition—cannot affect the power.   With the expediency or policy of the purpose the judiciary have nothing to do.

The views we have expressed are fully sustained by numerous adjudications.   The case of *The Town of Guilford* v. *The Board of Supervisors of Chenango County et als.* is one of them, and is directly in point.   (3 Ker. 143.)   The facts out of which that

case arose are these : Certain persons, by the names of Cornell and Clark, were elected in 1838, Commissioners of Highways of the town of Guilford, and, as such officers, by direction of the voters of the town, commenced a suit against a certain turnpike company for entering upon and taking possession of a public highway and bridge in the town, without having the same appraised and paid for as private property. In the suit, the Commissioners were cast, and, in consequence, subjected to the payment of costs, besides the fees of their own counsel. They then presented their claim for the expenses incurred by reason of the suit, to the auditors of the town for allowance, but those officers refused to audit it. They then applied to the Court for a *mandamus*, but the application was denied, on the ground that they had a remedy by an action at law. They then brought their suit against the town and failed, the Supreme Court holding that the Commissioners did not possess authority, by virtue of their office, to bring the suit against the turnpike company ; that the electors of the town could not, by resolution or otherwise, authorize the suit in the name of the Commissioners; that the resolution, if passed at a town meeting, did not bind the town ; and that, as a consequence, the Commissioners could not sustain the action for the costs and expenses incurred by them. The Commissioners had thus failed to establish their claim at law, and were in the same position with that of the holders of the approved claims in the case at bar, assuming the position of the Respondent that such claims were without legal obligation. They accordingly applied to the Legislature for relief, and, in February, 1851, an Act was passed, submitting to the electors of the town to determine what amount of compensation, if any, should be awarded to them for the costs and expenses they had incurred.

Under this Act the electors, by a large majority, decided against the claim. On the following year the Commissioners again applied to the Legislature for relief, and in February, 1852, another Act was passed, requiring the County Judge of Chenango County to appoint three Commissioners to take proof of and determine the amount of the cost and expenses which had been incurred in the suits with the turnpike company, and accruing from their non-payment; and to render an award thereon,

Blanding *v.* Burr.

and making it the duty of the Supervisors of the county to cause the amount of the award to be levied upon the taxable property of the town of Guilford, and to be collected for the benefit of Cornell and Clark, in the same manner as other taxes were collected by law. The award, under the Act, was rendered, and thereupon the town instituted suit to restrain the Board of Supervisors from levying and collecting the money, and to prohibit Cornell and Clark from adopting any means, under the Act of the Legislature, to enforce its collection, on the ground that the Act was unconstitutional and void. The Court, at a special term, decided the law unconstitutional and void, the proceedings under it of no avail, and directed a decree perpetually enjoining the parties from taking any steps for the collection of the award. On appeal, the Supreme Court, at a general term, reversed the decree, holding the law constitutional and valid. (18 Barb. 616.) Opinions were delivered by two of the Justices, Crippen and Gray. Mr. Justice Crippen, in his opinion, says : " There being no prohibitory constitutional restriction, the Legislature possesses the undoubted power to levy taxes upon particular districts, counties, towns, or other distinct localities, as may seem just and right, according to the benefits derived from the objects of such imposition. This principle is fully asserted and maintained by the Court of Appeals, in the case of *The People* v. *The Mayor of Brooklyn,* above cited. Also, see *Thomas* v. *Leland,* (24 Wend. 65.) It cannot be regarded as an open question since the decision of the Court of Appeals. The Legislature, acting upon the principle of these cases, passed the Act, on the 5th of February, 1852, for the purpose of affording relief to Cornell and Clark, against the manifest injustice to which they had been subjected by a refusal of the town to comply with a plain moral obligation resting upon it, but which could not be reached by the strict rules of the common law.

My conclusion is that the Act in question was eminently right and proper to reach the exigency of the case, and fully authorized by the fundamental law of the State. The Legislature possessed the right to pass the law, and the merits of the claim of Cornell and Clark furnish strong and palpable reasons for the enforcement of its provisions." Mr. Justice Gray, in his opinion, observes: " The Court could not relieve them, (the Commis-

sioners of Highways,) because the electors acted without statute authority, and hence there was no legal obligation on the part of the town, as such, to pay.

The moral obligation was not, and could not be, passed upon, by the Court, for the reason that the whole question turned upon the construction of a statute. An appeal was then made to the Legislature, who were of opinion, upon the facts established be-before them, that Cornell and Clark had acted in good faith in prosecuting the suit brought by them for the benefit of the pub-lic, and because, by strict legal rules, no remedy could be had by them in Court, they authorized a public tax to be levied for their relief, and apportioned upon that portion of the State which instigated the litigation, and for whose benefit it was in-tended. * * I have never heard it doubted, that whenever a moral obligation exists on the part of the government to re-lieve one of its citizens, sufficient to support a promise, if the same state of things existed between individuals, the Legisla-ture has the right to recognize the obligation, and discharge it by the imposition of a tax. The Legislature being the only de-partment of the government that can provide the relief, and being unrestricted in the exercise of their taxing power, except as to the mere manner of passing bills for that purpose, must of necessity be the exclusive judges, when the interest or the honor of the government justify a tax, and of what portion of the State ought in justice to pay it."

The decision of the Supreme Court was taken to the Court of Appeals, and was there affirmed, Mr. Justice Denio, using in his opinion, the following language:

"The Legislature is not confined in its appropriation of the public moneys, or of the sums to be raised by taxation in favor of individuals, to cases in which a legal demand exists against the State. It can thus recognize claims founded in equity and justice in the largest sense of these terms, or in gratitude or charity. Independently of express constitutional restrictions, it can make appropriations of money whenever the public well-being requires, or will be promoted by it, and it is the judge of what is for the public good. It can, moreover, under the power to levy taxes, apportion the public burdens among all the tax-paying citizens of the State, or among those of a particular sec-

Blanding *v.* Burr.

tion, or political division.   It is well settled that the authority to raise money by the exercise of the taxing power is not in conflict with the constitutional provisions protecting private property from seizure.   The two principles co-exist in the Constitution, and it is not difficult to distinguish between them." (3 Kernan, 149.   See, also, as illustrative of the same doctrine, the following cases: *Thomas* v. *Leland,* 24 Wend. 66; *Shaw* v. *Dennis,* 5 Gilman, 415; *City of Bridgeport* v. *Hous. Railroad Co.* 15 Conn. 492; *Inhabitants of Norwich* v. *County Commissioners of Hampshire,* 13 Pick. 60; *Tuchalet* ads. *City Council of Charleston,* 1 Nott & McC. 227; *Wilson* v. *Leland,* 2 Peters, 661, 662; Id. 412; *People* v. *Mayor of Brooklyn,* 4 Coms. 419; *Morris* v. *The People,* 3 Denio, 392; *Grant* v. *Courter,* 24 Barb. 237; *Benson* v. *Mayor of Albany,* Id. 248; *Clark* v. *City of Rochester,* Id. 446; *Sharpless* v. *Mayor of Philadelphia,* 21 Penn. 147—particularly opinion of Judge Woodward; *Moers* v. *The City of Reading,* Id. 188, etc.; *Cass* v. *Dillon,* 2 Ohio, 613; *Railroad Co.* v. *Commissioners of Clinton Co.* 1 Ohio St. Rep. 89; Id. 134; *People* v. *Morris,* 13 Wend. 337; *The People* v. *Mayor of New York,* 25 Wend. 681; *People* v. *Draper,* 25 Barb. 370; *The State, use of Washington Co.* v. *Baltimore and Ohio Railroad Co.* 12 Gill and Johns. 436.)

The only clause of the Constitution to which we are cited by the Respondents is contained in the 37th Section of Article 4, which enjoins upon the Legislature the duty to restrict cities and incorporated villages in their power of taxation and of contracting debts.   By this clause it is contended that the Legislature, having once exercised its powers in limiting the extent of taxation in municipal corporations, is prohibited from conferring any greater authority to tax property.   We do not perceive in the provision in question any restriction upon the actual control of the Legislature, over the whole subject of municipal taxation at all times.   Certainly there is none in express terms, and none can be fairly implied from the end to which the action of the Legislature is by the provision to be directed—the prevention of *abuses* in assessments and in contracting debts.   " The restriction contemplated," says the Supreme Court of New York, in speaking of the clause in the Constitution of that State, corresponding in exact language with the one in our own, " was meant to be exclusively under legislative discretion and control, and to

be effected by statute, and not by the organic law. Where a duty in respect to a particular thing is enjoined by the Constitution upon the legislative branch of the government, and the mode of doing it is left exclusively to legislative discretion, even though the authority may have been previously exercised by the Legislature, no limitation is thereby set to legislative power, nor can an intention be implied on the part of the framers of the Constitution, or the people who adopted it, to restrict the law-making department in the manner of discharging the duty. No just or logical implication can arise that in the section under review it was intended to restrain the Legislature, when dealing with the subject of municipal power, from conferring upon municipal governments new and enlarged powers, in respect to taxation and the creation of debts, if, in its wisdom, good government and the welfare and interests of the community to be affected were to be thereby promoted." (*Grant* v. *Courter*, 24 Barb. 241; *Clark* v. *The City of Rochester*, Id. 487.)

It only remains to consider the objection taken by the Respondent to the form of the Act. It is assumed that the Act is not in itself a law passed by the Legislature, but a mere proposition, to be submitted to the people under a certain condition as to whether it should take effect or not as a law. The objection was not urged upon the attention of the Court on the argument, nor is it taken in the return of the Respondents. It is put forth for the first time in the brief of the counsel, filed since the argument. We do not, however, for that reason, pass the objection by without notice, as, if true in fact, it is not merely technical, but one which goes to the entire efficacy of the Act. The clause in the Act upon which the objection rests is that which provides that if within the period intervening the publication of the report of the Examiners and the succeeding general election, a "petition in writing be presented to the President of the Board of Supervisors, signed by at least five hundred qualified voters, residents in said city and county, whose names are found in the assessment-roll as tax-payers, for the year one thousand eight hundred and fifty-eight, requesting that the question of issuing bonds, according to the report of said Board of Examiners, may be submitted to, and determined by, the qualified electors of said city and county, then such question shall be so submitted

and determined at the next general election, to be held on the first Wednesday of September, A. D. one thousand eight hundred and fifty-eight, in such mode as the Board of Supervisors shall, by order or regulation, prescribe, and subject to the general laws regulating elections. If no petition signed by the requisite number of qualified persons be presented to the President of the Board of Supervisors as aforesaid, the assent of the people to the issuing of said bonds shall be presumed, and in that case, and also in case it be so determined by a majority of the electors voting at the general election, as aforesaid, then the said bonds shall issue as hereinafter provided."

It appears from this clause, that the only question which was to be submitted to the people, if demanded, was that of issuing bonds *according to the report* of the Examiners. Of the many provisions of the Act, no other was, in any respect, made dependent upon the vote of the people, and this was only in effect a submission upon a certain contingency of the action of the Board. Upon that, if desired, the people might pass. The act itself took effect as a law immediately, and was not dependent upon any other body. Not so the act considered in *Barto* v. *Himrod*, cited by counsel, from 4th Selden, 486. The act in that case was made to depend entirely for its force upon the vote of the people. One of its sections, in·terms, provided that the electors should determine, at the annual election, *whether the act should or should not become a law.*

The act in question authorized the issuance of the bonds upon the condition that objection to their issuance was not interposed in a specified manner. As an emanation of the legislative will, it was perfect in all its parts. The condition upon the exercise of the authority was imposed by the Legislature itself, and involved no delegation of legislative authority. Laws may be absolute, dependent upon no contingency, or they may be subject to such conditions as the Legislature, in its wisdom, may impose. They may take effect only upon the happening of events which are future and uncertain; and, among others, the voluntary act of the parties upon whom they are designed to operate. They are not the less perfect and complete when passed by the Legislature, though future and contingent events may determine whether or not they shall ever take effect. In anticipation of

Blanding *v.* Burr.

invasion, or insurrection, or local disturbance, or other emergencies requiring the exercise of special powers, Acts are constantly passed, and yet no one has ever questioned their validity as laws, because dependent in their operation upon occasions which may never arise. So the Legislature may confer a power without desiring to enforce its exercise, and leave the question whether it shall be assumed, to be determined by the electors of a particular district. The Legislature may determine absolutely what shall be done, or it may authorize the same thing to be done upon the consent of third parties. It may command, or it may only permit; and in the latter case, as in the former, its acts have the efficacy of laws. So in the present case the Commissioners were required to issue bonds to the holders of the approved claims, subject only to the condition that objection was not taken to their issuance in a particular manner. The authority in them was ample, and the obligation perfect, subject, it is true, to be suspended only upon one event, which has never happened. We confess our inability to perceive the force of the objection taken by the learned counsel of the Respondent to the validity of the act in question, and the authorities cited by him do not support his position. "Half the statutes on our books," says the Supreme Court of Pennsylvania, in noticing a similar objection to an Act of the Legislature of that State, "are, in the alternative, depending on the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. But it cannot be said that the exercise of such a discretion is the making of the law. New privileges, conferred on a public corporation, need not be absolute and peremptory, so as to force them on the members against their consent. When individuals or corporators are merely authorized to do a thing, the doing of it necessarily depends on their own will; and we can see no reason why the acceptance of a new power, tendered to a public corporation, may not be made to depend on the will of the people, when it is expressed by themselves, as well as when it is spoken by the mouths of their officers and agents." (*Moers* v. *City of Reading*, 21 Penn. 202.) And on a similar question, the Supreme Court of Ohio observes that the true distinction "is between the delegation of power to make the law, which necessarily involves a

discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law.    The first cannot be done; to the latter, no valid objection can be made." (*The Cincinnati, Wilmington, and Zanesville Railroad Co.* v. *Commissioners of Clinton County,* 1 Oh. State R. 88; see, also, *Grant* v. *Courter,* 24 Barb. 242; *Clark* v. *City of Rochester,* Id. 467.)

From the conclusions to which we have arrived, it follows that the District Court erred, and its judgment must be reversed, with instructions to enter judgment for the relator on the demurrer, and to award a peremptory writ, commanding the Respondents to sign and issue bonds to the relator for the amount of the claims held by him, which were approved by the Examiners under the. Act of April 20th, 1858, upon the surrender of such claims for cancellation.

Ordered accordingly.