Emott, J.
The village of Norwich was chartered by an act of the- legislature, passed April 17th, 1816. (Laws of N. Y., vol. 4, p. 148.) On the' 7th of December, 1847, after the adoption of-the present constitution, the legislature passed a general act to provide for the incorporation of villages. (Laws of 1847, vol. 2, p. 432.) The ninety-second section of this act authorizes the electors of any village then incorporated to declare by resolution, at their annual meeting, that any of the sections of the act specified in such resolution, should apply to such village, and provides that from and after twenty days from the adoption of any such resolution, the sections of said act which should be therein declared to apply to such village should apply to the same, and all laws inconsistent with the sections so adopted should have no force or effect in respect to such village. At the annual meeting of the electors of the village of Norwich, held on the first Monday in May, 1852, certain sections of the act of December 7, 1847, were adopted in the manner pointed out in said act, and all the steps were taken which were requisite according to the act to make these sections part of the charter of the village of Norwich, and in force therein. The tax for the collection of which the defendant and others directed the taking of the property of the plaintiffs, was levied by the trustees of the village, pursuant to a vote of the qualified electors taken on the first Monday of May, 1854. It is not denied that the purposes for which the tax was levied, and the amounts which it embraced, were within the powers and purposes enumerated *461 in the sections of the act of 1847, which were specified in the resolution passed at the village meeting in 1852. The defendant and others, as trustees of the village, on the thirtieth of August, 1854, issued a warrant directing the collection of this tax. The tax had been previously assessed in conformity with section thirty-three of the act of 1847, which was one of the sections specified in the resolutions passed at the village meeting of 1852. The warrant issued in August, 1854, was returned by the collector on the 17th of March, 1855, and the tax assessed upon the plaintiff, among others, was returned unpaid. The warrant of such collector was thereupon renewed for the collection of such unpaid taxes on the 17th of March, 1855, and under this warrant the plaintiff’s property was seized. The provisions of the law of 1847 which were adopted by the vote of 1852, also authorized the renewal of such a warrant by the trustees of the village...
The question is presented by the plaintiffs, whether the action of the village of Norwich, at the annual meeting in May, 1852, was valid and effectual. If it is found to have been so, and to have made the various provisions of law which the electors of the village specified in the resolution adopted by them a part of their charter, this will dispose of nearly the whole of this case.
This is a question of legislative power. It is not denied that the statute itself was pursued, but it is claimed that the-legislature had no power to authorize an existing village to adopt by a vote of its electors provisions contained in the general law for the incorporation of future' villages, or any other existing provisions of law, and that such provisions could not in this way be made a part of the charter of such a corporation.
The legislature of this state possess the whole legislative power of the people, except so far as they are limited by the constitution. In a juridical sense, and so far as courts are' concerned with its application and construction, their authority is absolute and unlimited, except by the express restrictions of the fundamental law. The power to- pass a. general act for *462 the incorporation of villages does not result from the directions contained in the constitution, that the legislature “ shall pro-; vide for the organization of cities and incorporated villages or that “ corporations may be formed under general laws but from the general authority of the legislative body. The new constitution intended to introduce a system of general and not special legislation. To this end any barriers which existed in or under the former constitution in the way of such general legislation in respect to corporations were abolished, and the legislative power was left free to act by general enactments upon this class of subjects. But the power to pass such laws resulted from the grant of the legislative power of the people to the legislature, and not from the provisions which either indicated the general system which the constitution was intended to favor, and in some cases to direct, or from the removal of the restrictions in former constitutions in the way of such legislation. Such provisions were merely directions for the exercise of an existing authority, and not its creation; and the removal of restrictions upon it indicated that but for such restrictions it might even before have been exercised. It is not necessary to find in the constitution any express authority for such legislation as is here challenged. The meaning and intention of the legislature in the ninety-second section of the act of 1847 is unequivocal, and it is sufficient that there is nothing in the constitution to forbid- their providing by general laws for the alteration or amendment as well as the formation of corporations.
It is contended that this portion of the act in question is invalid under the decision of this court in the case of what is known as the Free School law. (Barto v. Himrod, 4 Seld., 483.) The argument is that these provisions of the act now in question in effect submitted the passage of the law to a popular vote, and were in conflict with the constitution as interpreted in that case. In Barto v. Himrod it was decided that a law which was general in its scope and applicable to the whole state, and which provided that the electors of the whole state should determine, at the ensuing general election whether *463 it should or should not become a law, and that in case at such election a majority of all the votes in the state should be cast against the law, it should be null and void, but if in favor of it, then it should become a law and should take effect, was unconstitutional. On the other hand in the Bank of Rome v. The Village of Rome (18 N. Y., 38), there was an act authorizing a subscription by the village of Borne to a certain railroad, and an issue of bonds to provide for the payment of such subscription. The act contained a section to the effect that the trustees of the village should have no power to make any such subscription, or create any liability under the act, until it should have been approved by two-thirds of the taxpayers, at an election to be held in a manner provided therein. If it appeared from the result of the election that the act was approved, the president of the'village was to make the subscription and issue bonds, but if otherwise these acts were not to be done. It was held that this law was constitutional, arid the bonds issued in pursuance of it were valid. In Starin v. The Town of Genoa and Gould v. The Town of Sterling (23 N. Y., 439, 456), acts had been passed authorizing these towns, respectively, to borrow money and execute bonds therefor, and to pay over the money to a railroad company named in the , act; but it was provided that the town officers should have no power to do any of the acts authorized thereby, until they should procure and file in the county clerk’s office the written assent of two-thirds of the taxpayers of the said towns. It was held that these laws were constitutional and valid. In' the case of Grant v. Courter (24 Barb., 232), an act to authorize any town in the counties of Schenectady, Schoharie, &c., to subscribe to the Albany and Susquehanna railroad, containing similar provisions for the assent of the taxpayers with the' acts last referred to, was sustained by the Supreme Court, the question being carefully discussed by Mr. Justice Weight in the opinion of the court. In Clark v. The City of Rochester (id., 446),* a law authorizing the city of Bochester to borrow money for a specified purpose, but declaring that the sections *464 of the act conferring this power should not take effect until they were submitted to the electors of the city, and approved by a vote of two-thirds of such electors, was held to be constitutional. These cases arose under laws passed since the adoption of the present constitution. In Corning v. Greene (23 Barb., 33),* a similar question was presented under the Albany Pier Law, passed in 1823. The twelfth and last section of that act provided that the corporation of the city of Albany should file their consent to the bill within sixty- days after its passage, or the same should be void. An objection to this act, on the ground that it was an unconstitutional delegation of legislative authority was considered and overruled in this case.
The case of Barto v. Himrod decided that the legislature does not possess the power to submit to the people of the State the question whether an act shall or shall not become a law; or to pass an act to take effect upon the happening of a future event unless they determine for themselves the expediency or inexpediency of the law in the supposed event. They cannot delegate to the people the power to vote on the precise question which the constitution makes it their own duty to decide, that is, the expediency of a given law. In other words, an act cannot be passed to - take effect, if the people of the state' shall vote that they think it ought to do so. In the cases of the village of Borne and the towns of Sterling and Genoa (18 N. Y., 23; 23 id., 439) the laws in question were sustained on the ground that'their effect was only to remove certain disabilities-and confer certain powers upon the village and the towns in question, and that what was left to the vote of these municipal bodies was to determine whether they would avail themselves of the powers and privileges thus conferred. Judge Selden remarks in his' opinion in Gould v. The Town of Sterling, that the legislature, in the statute then in question, had done absolutely and finally all which was essential for them to do, and that it was not submitted to the people of the town *465 to determine whether the act, or any part of it, should take effect, but only the prudential question whether they would avail themselves of the power conferred upon them. He adds that it was upon this distinction, and not upon the idea that the act was submitted to the people of a village, and not to the people of the whole State, that he assented to the judgment in the case of the Bank of Rome v. The Village of Rome. Such a distinction is undoubtedly most material under the authorities in the decision of such cases. It may be shadowy and difficult to find in some cases, but it must be pursued and applied to the best of our ability. I must observe, however, that it is not immaterial, upon this very question, whether a law is submitted to the acceptance of the people of the whole State, or to those of a particular locality. The mere form of submission, or the precise question submitted to the vote of the electors, is not decisive of the question whether the law is really enacted by the legislature, or submitted to the people. It is substantially the same thing whether a constituency vote that a law shall take effect, or that they will accept it or act under it. If the Free School law had provided that the electors of the State should vote that they would or would not accept its provisions, instead of voting that it should or should not become a law, the case and the judgment of the court upon it would not probably have been different. And in the case of local statutes it is not very material whether the local constituency signify their consent to the exercise of powers conferred by a law, or their consent that it shall take effect. As such a law is confined to the localities in question, it does not take effect except by the exercise of the powers conferred upon the local bodies, corporate or municipal. Their acceptance of those powers is the same thing as giving effect to the law. A similar law, complete in its provisions and conferring new or additional powers and privileges upon the people at large, or upon certain of their officers, as school officers or the like, if framed and submitted to their acceptance, could not be sustained under the case of Barto v. Himrod. It is a material distinction, however, between the cases, that the people of a particular *466 municipality or local body are not the constituents of the legislature. They are not the people of the State of Hew York, who have irrevocably committed their power of legislation to the legislature, by a delegation which does not permit that legislature to remand any legislative question to their constituency. A city or a town or a village is a separate recognized local body, which, without exercising legislative power, may signify, if permitted, its assent or dissent to any grant or withdrawal of powers or privileges. The vote of the whole people of the State upon a question of the expediency of a general statute may be essentially an act of legislation. The vote of a local constituency is an assent or dissent to an act of grant or deprivation done by the legislature, but affecting themselves. Upon these principles the legislature has, in numerous instances, submitted charters of incorporation, or acts amending them to a vote of the inhabitants affected thereby. A very cursory examination of the statute books shows many such acts. I may cite a few, (Charter of Syracuse, Laws of 1847, p. 652; Charter of Brooklyn, Laws of 1849, p. 57; act amending the Charter of New York, id., p. 278; act to establish free schools in the village of Poughkeepsie, Laws of 1843, p. 279.)
In the present case the legislature passed a statute conferring certain powers, and imposing certain duties upon the corporations of villages and their officers. The act was complete in itself, and was effectual for the purpose of providing for the incorporation of new villages, independent of any such action as is contemplated by the 92d section. I do not, however, attach any importance to this fact. If the legislature had passed an act containing simply the sections specified in the resolution of the village meeting of Horwich, and providing that their provisions might be accepted by any village in the State, or by the village of Horwich, and become part of the charter thereof, provided the electors of such village signified their acceptance of the same, I can perceive no constitutional or other objection to such a law. This was precisely the effect of the portion of the law of 1847 now under- *467 consideration, as to this particular case. The legislature in effect enacted certain amendments to the charter of the village of Norwich, but provided that the electors of that village should be allowed and required to signify their consent and acceptance of such amendments before they should take effect. This was simply authorizing the members or electors of a corporation to signify whether they would accept a grant of additional powers or submit to new restrictions. It was not necessary to have the corporate consent to such an act, but such consent certainly did not invalidate it. It would disturb a vast amount of the past legislation of the State, if such a statute were declared void or ineffectual. I perceive no difference whether the statute submits an entirely new charter, or amendments to an existing one, to the constituency to be affected. Either way the legislative action is complete and final, and the vote. of the municipality is simply a determination of the expediency of their accepting the result of that _ action. I am of opinion that by the vote of the village meeting of Norwich in May, 1852, the sections of the general act specified in the resolutions of that meeting, became a part of the charter of said village, and that under such amended charter the trustees thereof had power to levy and collect such a tax as that imposed upon the plaintiffs.'
This conclusion renders it unnecessary to examine the constitutionality of the act of 1855, or the powers of the trustees ' under the original charter, and I express no opinion on these questions. There remain, however, one or two objections to the manner of proceeding of the trustees which must be considered.
The warrant for the collection of the tax in question was signed by only four of the five, trustees of the village. It does not appear whether the fifth was present when it was issued, or was notified to attend for that purpose. It is contended that the warrant must be signed by all these officers. It would be a sufficient answer to the objection here to say. that it was not taken at the trial specifically, so as to enable the defendants to meet and to obviate it, as they might have done. *468 But I am of opinion that this duty of issuing a warrant is imposed by the statute upon the board of trustees as a body, and may be exercised like any other power given by the statute to the officers of a corporate body by a proper vote of a legal quorum at any regular meeting duly convened. It is the act of the board, and not of the individual officers, and it requires to its validity only what is required for any other corporate act authorized by the charter.
The only other objection requiring notice is to the form of the warrant. In 1855 an act was passed by the legislature amending the charter of this village. (Laws of 1855, ch. 63.) This act contained, among other things, two sections declaring the proceedings which had been previously had, to levy this tax to be valid, and directing the trustees to proceed to collect it. The plaintiffs contend that this act is unconstitutional and void, and they object that the warrant issued by the trustees cannot be sustained except under this act of 1855, because it refers to the provisions of that act, and recites that it is issued in pursuance of the same. This is a merely formal objection and is not difficult to overcome. The original warrant to collect the tax was issued in August, 1854, and was in the form required by the charter of the village, as amended by the provisions of the general law which had been adopted. The warrant issued March 17th, 1855, was not a new warrant, or to collect a new tax, nor was it a warrant specially or only authorized by the statute of 1855. Its whole efficacy is contained in the words “ we do hereby renew the said warrant.” The amendments to the charter adopted from the general law conferred the power to renew such a warrant, and this was an exercise of that power and a substantial compliance with the act. It would be an unreasonable technicality to permit such an exercise of a valid authority to be vitiated by a mere reference to, or recital of, a questionable or even an invalid source. It is sufficient that the power exists, and that it was duly exercised. It- will not be defeated because the officers exerting it incorrectly state that it proceeds from a wrong source.
*469 I am of opinion that the judgment of the Supreme Court was right for the reasons I have given, and should be affirmed.
Balcom, J., expressed no opinion; all the other judges concurring,
Judgment affirmed.

 That decision was affirmed by this court at March term, 1864.—Reporter.

 Also affirmed in this court, hut upon another ground, without considering the objection here stated.—Reporter.