## SUPREME COURT.

### FREEMAN CLARK agt. THE CITY OF ROCHESTER.

*Municipal corporations* have no power to subscribe for, or to hold stocks in railroads, or other private corporations; or to issue their bonds in payment for such stocks.

The legislature have no power, under the constitution, to delegate this authority to municipal corporations. The legislature cannot do that by a local and subordinate legislative body, deriving all their powers from it, which it could not do directly by its own proper legislative enactment. [*This important constitutional question, involving the power of taxation, is very fully and ably discussed in the following opinion.*]

*Monroe Circuit, November,* 1856.

THE plaintiff brings this action to recover the money paid upon a contract between the parties, bearing date March 2, 1853, in respect to three hundred thousand dollars of the capital stock of the Genesee Valley Railroad Company, for which the defendants, in their corporate capacity, had become subscribers under the provisions of *Chapter* 389 *of the Laws of* 1851, and in part payment for which they had issued and sold the bonds of the city to the amount of one hundred thousand dollars.

By the agreement between the parties, the plaintiff agreed to purchase of the defendants the stock subscribed for by them, and to pay for the same at the times and in the manner particularly specified; and the defendants agreed to issue the city bonds for the remaining two hundred thousand dollars, and deliver the same to the plaintiff from time to time, as provided for by the contract.

The plaintiff has paid to the city, at different times, in part performance of the contract on his part, the aggregate sum of forty-one thousand seven hundred and forty dollars, and has received on the premiums of the bonds sold by the city, and which, in pursuance of the terms of the agreement, were paid to the plaintiff, and, by way of interest paid by the railroad company upon the payments made by the city upon their sub-

Clark agt. The City of Rochester.

scription, the sum of twenty-six thousand five hundred and forty-one dollars and eighty-seven cents.

S. MATTHEWS, *for plaintiff.*
E. GRIFFIN & O. HASTINGS, *for defendants.*

W. F. ALLEN, Justice.   The plaintiff bases his claim to re- cover in this action in the want of power in the city of Roches- ter to become a subscriber to, or holder of the capital stock of the Genesee Valley Railroad Company, or to issue the bonds of the city for the purposes mentioned in the agreement of the parties, claiming that the law under which the defendants have assumed to act in the premises, is unconstitutional and void. The provisions of the statute, under which the authority was assumed by the defendants, make a part of an act amending the act to amend and consolidate the several acts relating to the city of Rochester. (*Chap.* 389 *of Laws of* 1851.)

Sections 285 to 292 of that act, inclusive, provide for the borrowing, by the common council, on the faith and credit of the city, of $300,000, and the execution of bonds therefor, un- der their corporate seal, and the investment of the money thus raised in the stock of the Genesee Valley Railroad Company, by a subscription to, or a purchase of such stock, and for the holding, management and disposal of the stock, the receipt of the dividends and the collection by tax upon the real and per- sonal estate of the city, of any sums necessary to defray the interest upon the bonds after the application of the dividends to that purpose.   By § 291, it is declared that the sections con- ferring this power upon the common council, and prescribing the mode of its execution—(285–291)—should not take effect until they should have been submitted to the electors of the city, at an election to be held as in the act prescribed.

A city, as a public municipal corporation, organized for po- litical and governmental purposes, is in many respects subject to different rules from those which are applicable to mere pri- vate corporations.   The binding force of the organic law upon corporators does not depend at all upon their assent to its terms,

and there is nothing in the charter or act of organization, hav‑ing the effect of a contract between the state and the body cor‑porate thus formed. City governments are said to be *imperia in imperio;* they are auxiliaries to the government, having the privilege of managing their own local interests, under the au‑thority and protection of the state.

The city authorities, representing the people secondarily to the legislature, can only be invested with that power over the property of the individual citizen, which the people primarily, or the legislature as the representatives of all the people, orig‑inally possessed.

In other words, while private corporations may be formed for any and all lawful purposes, the corporations, by accepting of the charter, assenting to and becoming bound by its terms, and the sovereign, as well as the corporators, being bound by the contract thus expressed, a municipal corporation can only be formed for political purposes, and invested with such powers as are necessary or incidental to the purposes of a local govern‑ment. The sovereign power by which the corporation is cre‑ated, may repeal, alter, or modify the charter. The powers conferred are mere municipal regulations, subject to the abso‑lute control of the government, with the qualification that the power delegated to the subordinate legislature cannot exceed that possessed by the legislature from which the power is im‑mediately derived.

The legislature of the state cannot do that by a local and subordinate legislative body, deriving all their powers from it, which it could not do directly by its own proper legislative en‑actment. The legislative power of the state is vested in the senate and assembly. This power is not defined by the con‑stitution; but constant restrictions and limitations upon its ex‑ercise are imposed by it, and subject to the restrictions and limitations of that instrument, the power of the legislature, act‑ing in the place of and representing the people, is ample to do all the people could rightfully do. The restrictions are either imposed in express terms, or are the result of a necessary im‑plication from the language employed, or the powers expressly

Clark agt. The City of Rochester.

conferred. For example, the constitution by authorizing the appropriation of private property to public use—and in a single instance for a private use—impliedly declares that for any other purpose private property shall not be taken. (*Per* SAVAGE, *Ch. J., In the matter of Albany-street,* 11 *W. Rep.* 149.)

The constitution has been denominated the commission of the legislature, within the pale of which they must act; and one great utility of constitutions, in a government like ours, consists in defining with some accuracy the boundaries within which the powers of the several departments of the government are limited, and the protection thus afforded to the individual citizen against the encroachment of delegated power—which is said to be always aggressive.

There is no provision in the constitution of this state, in terms, prohibiting the legislature from compelling the citizen, either individually or in communities, against their will, to become shareholders in companies formed for the construction of canals, railroads, manufacturing, commercial, or other purposes, or denying to the legislature the right to judge for the citizen what investments of capital shall be made by him, or in what business he shall embark, either with a view to a profitable return, or to the benefit of his property at large, or the greater benefit of the public; *neither is such power conferred*—and its assumption is adverse to the spirit of the whole instrument, and inconsistent with the just rights of the people.

No person shall be deprived of life, liberty, or property without due process of law; nor shall private property be taken for public use without just compensation; and but one case is recognized as a fit case for the taking of private property for private purposes, and that is the case of a necessary private road—which being expressly provided for, according to well established rules of construction, excludes every other case. (*Art.* 1, §§ 6, 7.)

The credit of the state shall not, in any manner, be given or loaned to, or in aid of, any individual, association, or corporation; (*Art.* 7, § 9;) and an effort was made, by § 12 of the same article, to restrict the power of the legislature to contract

Clark agt. The City of Rochester.

debts, by or on behalf of the state, even for the legitimate pub-
lic purposes. That the effort has not proved successful does
not detract from the force of the provision, as evidences of the
intent of its framers.

And §§ 13 and 14 are designed to induce caution in the im-
position of taxes by the legislature.

It is also enjoined upon the legislature to provide for the or-
ganization of cities and incorporated villages, and to restrict
their power of taxation, assessment, borrowing money and con-
tracting debts, and loaning their credit so as to prevent abuses
in assessments, and in contracting debts by such municipal cor-
porations. (*Art.* 8, § 9.)

These several provisions, brought together, tend to show the
general scope and design of the instrument, and the intent of
its framers, and thus throw some light upon particular provisions
bearing more directly upon the question before me, and aid in
their construction; at least they show that it was no part of
the design of its framers to confer any enlarged or doubtful
powers upon the state or municipal legislatures over the prop-
erty of the citizen.

The property of the citizen is, to some extent, in the power
and at the disposal of the government. Its use may, to some
extent, be regulated. It may be forfeited for crime; it may
be condemned, by appropriate process, as injurious to the
health or morals of the public, or to the well-being and safety of
the state; it is liable to be taken for public purposes, upon just
compensation made; and it is liable to taxation and assessment
for the general purposes of the government, or for local bene-
fits and improvements. But the citizen does not hold his prop-
erty by so slight a tenure that it can be taken from him by the
legislature for any and all purposes, either under the guise and
form of taxation, or color and pretence of exercising any of the
other recognized powers of the government. All power in the
legislature over the property of the citizen, is derived from the
people, and is either expressly conferred by the terms of the
constitution or impliedly granted, as incidental to some power

expressly given, or results from the necessities of government, and exists as an incident to government.

I know of but two ways in which, except by process of law, the property of an individual may, without his consent, be taken from him, or in any way encumbered. The one is in virtue of the right of eminent domain, for which provision is made by the constitution, and the other is by taxation, the right of which is necessarily inherent in the government. The citizen is protected against any other attempt upon his property by the declaration, that he shall not be deprived of it except by due process of law.

The proceedings of the common council of the city of Rochester, by which they have undertaken to bind the corporation, and to this extent burden and encumber the taxable property of the city, for the payment of $300,000, in return for a like amount of capital stock of a railroad company, is not an attempt to take property by due process of law, which imports a suit instituted and conducted according to the present forms. (*Taylor* agt. *Porter*, 4 *Hill's Rep.* 140.) Neither is it, nor is it claimed to be, an attempt to exercise the right of eminent domain, the power to exercise which may be delegated by the legislature to a municipal corporation, to be exercised within the territorial limits of the city or village.

The right of eminent domain operates upon an individual— the right of taxation upon a community, or a class of persons in a community. (*People* agt. *Brooklyn*, 4 *Com. Rep.* 419.)

The authority of the legislature to confer upon the common council the power to purchase or subscribe to the capital stock of the Genesee Valley Railroad Company, and to borrow money upon the corporate bonds of the city to pay for the same, if it exists, must rest for its foundation upon the right of taxation, which is a right existing of necessity.

Although the projectors of the law, and those who favored its sanction by the electors of the city of Rochester, may not have supposed that the act of subscription to, or the purchase of the stock of the company, and the payment therefor in the bonds of the city, would result in any actual burden to the tax-

payers; and although it is possible that in no event would loss or harm come to the city, and that property holders will realize all the benefits, direct and indirect, which were anticipated from the construction of the road, and the stock received will redeem the bonds of the city, and in the meantime, by dividends of its earnings, meet the interest as it accrues; it must nevertheless be treated for all purposes as a burden to the amount of the bonds and the accumulating interest, imposed by the sovereign power upon the taxable property of the city; and whether payable by tax to be raised this year or in 1873, is immaterial, so far as any principle is involved on the question of authority.

If the legislature, or the common council, acting under its authority, had the right to charge the taxable inhabitants and property of the city with the payment of this large amount in 1873, they had the right, and a better and clearer right, to require its payment in 1856, or by tax to be levied at once upon their own property, rather than that of posterity, who have no voice in the matter: for the power being conceded, there is no jurisdiction vested anywhere to control or regulate its exercise.

In matters within its jurisdiction, the legislature is supreme. It cannot be controlled as to the amount of taxes, where it may lawfully impose any, or the mode, manner, or time of their collection.

The act contemplates a deficiency of dividends to meet the accruing interest, and therefore provides that the deficiency shall be met by a tax upon the property of the city; and it also contemplates a possible sale of the stock below par, and in that event the necessary result would be a tax to redeem the bonds to the amount of the deficiency. But it is sufficient for the purposes of this case, that the burden is imposed upon the property of the city by the execution of the corporate bonds, which, if the law is valid, may be enforced against the city by tax. Could, then, the legislature of the state, directly by act of its own, or indirectly by act of the common council, proceeding in subordination to, and by authority of the legislature, have imposed a tax of $300,000 upon the taxable property of the city,

to be paid, when collected, to the Genesee Valley Railroad Company, or any holder of its stock, whether named in the act or not, upon the transfer to the city authorities of that amount of the stock of that road?

It is clearly a question as to the right of taxation, and not of eminent domain.   Judge RUGGLES, in *The People* agt. *Brooklyn,* says, that "money cannot be exacted by the government by right of eminent domain, excepting perhaps for the direct use of the state at large, and when the state at large is to make compensation."   "The framers of the constitution could not have intended to delegate to municipal corporations the right of taking money under this power, because it is entirely un-necessary."

Taxation is an incident to sovereignty, and by it the public burdens are apportioned among those who ought, in the judg-ment of the legislature, to bear them; and it is said by Chief Justice MARSHALL, in *M'Culloch* agt. *Maryland,* (4 *Wheaton's Rep.* 316,) "that as the exigencies of the government cannot be limited, the people of a state impose no limits to the exer-cise of this right of taxation."   And the same doctrine is as-serted, in substance, by the same judge, in *The Providence Bank* agt. *Billings,* (4 *Peters' Rep.* 514.)   Both cases, however, as-sume that taxes are only to be imposed to meet the exigencies of the state for the discharge of the public burdens, and that it is only *those burdens* in the apportionment and levying of which the legislature of a state is supreme, or in regard to which they have any authority.

Judge RUGGLES, in the case before cited, says, "Taxation exacts money or services from individuals, *as and for their re-spective shares of contribution to any public burden.*"

In *The State Bank of Ohio* agt. *Knoop,* (16 *How. Rep.* 369,) M'LEAN, Justice, in pronouncing the judgment of the court, says, "The power of taxation has been compared to that of eminent domain, and it is said, as regards the question before us, they are substantially the same.   These powers exist in the same sovereignty, but their exercise involves different principles.   Property may be appropriated for public purposes,

but it must be paid for. Taxes are assessed on property for the support of the government, under a legislative act."

Whenever a tax is imposed by the sovereign power of the state, it will be assumed, unless the contrary clearly appear by the act itself, that an exigency or necessity existed, and that it is as for a part of the public burden proper; and if in any case a law of the state, imposing a general tax, should be held invalid for want of jurisdiction, it must be palpable that the public are not in any manner interested in it, as would be the case of a law directing a tax to be levied and the avails given to a particular individual, or appropriated to some admitted private purpose, in which the public had no concern, and from which they could derive no benefit. That the right of taxation for such a purpose is among the reserved rights of the people over the property of the state, or among the inherent powers of the government, I am not prepared to believe.

The legislature may, in legislating for a particular locality, regulate the burdens and expenses of its government, and make the property of the locality to bear all the burdens and expenses incident to its government. This power may be delegated to a local legislature, as the common council of a city; but the local burdens to be borne must, I think, be confined to the expenses incident to the locality, and the particular community sought to be taxed.

The city of Rochester could not properly be taxed for the support of the local government of the city of Auburn. The legislature might provide by law a proper police for the city, make all necessary sanitary regulations, cause all necessary streets to be laid out, opened and worked, and all local improvements to be made, and do whatever else within the locality they should deem proper for the good government of the community, and assess the expenses, as a part of the public burden, upon the community for whose benefit the expenses should be incurred; or such part of the community as they should think ought, by reason of particular benefits, to be charged; and this power may be delegated to the common council of a city for the locality embraced within its boundaries.

But the jurisdiction of the substituted legislature is strictly local, and the burdens which they are authorized to impose upon the constituent body, must be directly incidental to their government, and be strictly such as concern them as a community, bound together by their charter for municipal purposes. A city, or other locality, may be taxed by reason of local benefits for a public work, beyond what the residue of the state is taxed for the same object. (*Thomas* agt. *Leland*, 24 *W. Rep.* 65.) The entire work is a public work, and its cost a public burden, in the apportionment of which the legislature have a discretion which cannot be controlled.

This does not prove that every project requiring the expenditure of money is a public burden, the proper subject of a tax, because the legislature, state, or local, so elect to name it; and it by no means follows that they can be taxed for the benefit of a private corporation, although the work undertaken by it is so far public that it will be considered as representing the state in the exercise of the right of eminent domain in the entering upon and taking property necessary to its construction. A bill appropriating the public moneys, or property, to the use of such a corporation, would require a two-third vote of the legislature—as an appropriation of the public moneys, &c., to a private purpose. (*Constitution, Art.* 1, § 9; *Smith on Statutes, &c.*, 418, and § 29.)

But the acts of the legislature and common council involved in this action, do not profess to impose a tax, or to provide for a tax *in futuro*, either absolutely or upon any contingency, in aid of the construction of any work, public or private. They simply provide for a certain number of shares of the capital stock of a private corporation, in virtue of which the city is to become a shareholder, with all the rights, privileges and liabilities of other shareholders.

The building of the road contemplated may or may not be of great incidental advantage to the city of Rochester, and greatly appreciate the value of real property within its limits; but, this being conceded, it will be difficult to prove that the purchase of the stock in the company is within the legitimate power of

the legislature, or the common council, or that its cost is among the burdens which can be the proper subject of taxation.

The building of manufactories, the establishment of large commercial houses, and extensive business and commercial operations, and the building and sailing of vessels, may be each and all essential to the prosperity of a city, and may all be accomplished by incorporated or unincorporated associations, organized for the purpose; but it has not, that I am aware of, been supposed that a city could properly become a partner or stockholder in any such association, and levy, by tax upon the property of the city, the necessary contributions for the purpose. If so, then a city can, by act of the legislature, become one vast railroad, manufacturing, or commercial corporation— or, if thought best, a banking association. If individuals choose to invest their property or credit in enterprises of that character, they may do so, and no law will be invoked to prohibit it; but the option whether to embark in them or not should be, and I think is, with the individual citizen, and not with his representatives in the city or state government. It is not necessary to say that municipal corporations may not, in any case, exercise a special franchise, vested in them by the legislature with a view to the increase of their revenue, an enhancement of the public property, or a diminution of the necessary public expenditures.

The right of taxation, however, can only be exercised either by the legislature or the municipal corporation, in respect to the proper public burdens incident to the city government and the exercise of the political powers; for as to such only does the necessity of taxation exist, and not to enable the city government to become traders, merchants, bankers, shipowners, manufacturers, or shareholders, or partners in business associations, incorporated or unincorporated.

And a special franchise thus to deal with the property of the citizen cannot rightly be exercised by the government, or municipal corporations formed under it.

To become dealers in stocks of private corporations, with a view to profit, or stockholders with a view to future revenue,

is not one of the incidents of a city government, to accomplish which they may tax the property within the city limits.

In the nature of things, there can be no necessity for the exercise of such a power; and as the right of taxation rests upon the necessities of the case, the power cannot exist. That the work contemplated by the private corporation may, and probably will, prove beneficial to the interests of the city, does not vary the question. The purchase of the stock by the city may or may not be essential to enable the corporation to perform its contract. It is enough that the city does not undertake the work, but merely become stock-dealers; and they are not even bound to aid the company by subscribing to the stock: they may go into the market and buy it of the stockholders.

The work is in no way, and by no act recognized or treated as a public work, to be done by and at the expense, and for the benefit of the city, and as one of the legitimate duties resting on the city government. The decision of this question might, I think, very properly be rested, in the absence of any express power conferred by the people in the constitution, and aside from any of the prohibitory and restraining clauses in that instrument, upon the absolute want of power, in municipal corporations, to burden or tax the property of the citizen for the purpose named, and the want of jurisdiction in the state, by legislation to confer the right. But the prohibitions of the constitution are, I think, ample to protect the citizen against taxes and burdens of this nature.

Without referring more particularly now to the several provisions of the constitution, in restraint of the power of the legislature over the property and credit of the whole state, and which would seem, in their spirit, to prohibit the granting of a power to a local government, in respect to the property and credit of a local community, which is expressly denied to the state government in respect to the entire public, I will simply refer to a provision which I think expressly forbids the legislature to grant the power which the act in question assumes to confer upon the common council of Rochester. The ninth section of article eight was designed for the protection of the tax-payers

in cities and villages *against unwise* and inexpedient *taxation,* for purposes within the scope of the ordinary municipal legislature, and imposes a duty upon the legislature in respect to it. This duty, so far as positive duty is enjoined, it is true, is one of imperfect obligation, and may not be enforced, and that it has been so esteemed by the legislature, upon whom it was designed to act, is quite clear, from an inspection of the session laws of the state from 1846 to the present time.

But of the propriety of *restricting the power of cities in the* exercise of their proper functions, in the respects named in this section, the legislature must, of necessity, be the exclusive judges; and it must be assumed by the other departments of the government, that what they have done, or omitted to do, in this direction, has been for good and sufficient reasons, and in the exercise of a sound discretion.

But the section has a wider scope; and in the duty enjoined to restrict the power of the municipal legislatures to tax the property, or loan the credit of cities and villages, there is, by a very plain and necessary implication, an absolute prohibition to enlarge their powers. A discretion is vested in the legislature as to the restriction, but none whatever in regard to the granting of new and enlarged powers in respect to taxation, and the creation of debts.

The power to tax property in aid of a private corporation, or for the purchase of its stock, is not among the ordinary powers of a municipal and local *government,* and required special legislation to confer it; and this special legislation, I think, is clearly prohibited by the constitution.

Without this effect, the provision is but an expression of opinion, a recommendation to the legislature, to which heed may or may not be given, and to give it significance, and any effect as a part of the fundamental law of the land, it must be construed as an absolute restriction upon the powers of the legislature, in conferring powers upon municipal corporations. This is its spirit and intent, and it must have this effect, or it has no practical force. There was an attempt to amend the provision, so as to save, by implication, debts before contracted

by cities and villages, but the amendment was negatived, and the section was adopted, with only two dissenting votes, as it was introduced, and without amendment. (*Debates of Convention, Argus ed.* 829.)

In the judgment of the convention, municipal corporations, in the exercise of their ordinary political functions, needed legislative restraint; and that their powers to tax the property, or charge the city with a debt, could not, with a due regard to the rights of its property-holders and citizens, be enlarged, and in this section they have in substance and effect so said, and by it the legislative power of the state is restricted and limited; and as the act in question is in contravention of this provision of the constitution, it is void.

Again: within the principle settled by the court of appeals in *Barto* agt. *Himrod*, (4 *Seld. Rep.* 483,) the act of the legislature, under which the defendants assumed to act, is unconstitutional and void, for the reason that the fact of its becoming a law was made to depend upon the result of a popular vote. The authority to incorporate cities and villages, to prescribe their boundaries and define their powers, and the mode and manner of their execution, is devolved upon the legislature; and they cannot delegate this power, or devolve the duty upon any other body. I am unable to distinguish this case from that cited.

To what extent the sovereign power of the state was to be delegated to, and vested in the common council of the city— in what cases, and to what extent they should possess the power to charge the taxable property of the city by immediate taxation, or by contracting debts to be paid in the future, and what in all respects should be the extent of the discretion and power of the council, as the local legislature for the territory embraced within the boundaries of the city, should have been definitely settled by the legislature, as peculiarly within their province. The expediency of laws of this character is to be judged of by the legislature, and they cannot shrink from the constitutional responsibility resting upon them.

It is not the case of a law conferring new powers, or addi-

tional franchises upon a private corporation, which the corporation may elect to accept or not, as they deem expedient. This is the case of a law making provision for the government of a portion of the state, the exercise of a portion of the sovereign power of the state in a particular locality, and over the inhabitants residing within certain territorial limits; and all the people of that locality, as well as of the entire state, had committed it to the legislature to make and declare the law in that, as in every other matter under the constitution; and the minority have never agreed that a law, passed by a majority vote at a popular election, should bind them or their estates, whether such law affects the whole state or only a small portion of it. The vote of the city, as provided for by the act, was not to advise or control the common council in the exercise of their discretion in the matter of subscribing for the stock, and issuing the city bonds after the law had taken effect, but to decide whether the act vesting the discretion in the council should become a law or not, which is the very case decided in *Barto* agt. *Himrod*. It would have been different, had the act of the legislature vested the power in the city government, but restricted the common council in its exercise, and made the exercise to depend upon the contingency of a favorable expression by the electors of the city; but the question submitted was, whether the power should be conferred upon the city council to act in the premises, which rendered the law unconstitutional and void.

It follows, if I am right upon either of the three propositions considered, that the contract between the parties is absolutely void, and that the defendants cannot perform the same upon their part, and that if they, in form, fulfil their agreement, and execute and deliver to the plaintiff the corporate bonds of the city, according to its terms, they would be worthless. The agreement of the plaintiff is, therefore, without consideration, and could not be enforced against him, and the money paid by him in part performance was paid without consideration, and may be recovered back in this action. The contract is still executory, and being incapable of performance without fault in

the plaintiff, may be rescinded by him, and an action maintained for the recovery of the money paid.

The defendants have received so much money, which *ex æquo et bono* belongs to the plaintiff. (*Chitty on Contracts*, 622, 623—636, 637; *Young* agt. *Cole*, 3 *Bing. N. C.* 724; *Morgan* agt. *Groff*, 4 *Barb. R.* 524; *Rice* agt. *Peet*, 15 *John. Rep.* 503; *Gillett* agt. *Maynard*, 5 *John. Rep.* 85; *White* agt. *Franklin Bank*, 22 *Pick. Rep.* 181.)

The plaintiff has, however, received certain sums of money from the defendants, and upon their order or draft upon the railroad corporation, which should be accounted for by him.

To this extent he has been benefited by the contract, and by the acts of the defendants in the transaction, and has received money to which he is not entitled, and which but for the contract would have been received by the defendants. This is the proper subject of a set-off in this action, and must be deducted from the amount paid by the plaintiff.

This amount he has received from the defendants, and is estopped from denying their title to it.

Judgment must be given for the plaintiff for the balance, with interest, to wit, $18,527.54.