THE TOWN OF DUANESBURGH, Respondent, *v.* NATHANIEL C. JENKINS, Commissioner, etc., et al., Appellants.

The method in which the assent of a town to its subscription for stock and the issuing of its bonds to aid in the construction of a railroad may be given, is in the discretion of the legislature. It may authorize such assent to be expressed by any officer of the town; and where it has once acted, it does not part with any portion of this power. Where it has previously clothed a majority of the tax-payers with this authority, it may take it away and confer it upon a town officer; and it may also take away any conditions previously imposed and give the officer unrestricted authority to act, or it may impose other and new conditions at its pleasure.

Under the statute authorizing certain towns to subscribe to the capital stock of the A. and S. R. R. Co. (chap. 64, Laws of 1856), and the acts amendatory thereof (chap. 401, Laws of 1857; chap. 384, Laws of 1859), a commissioner had been appointed for plaintiff with authority to issue bonds and subscribe for stock, provided certain consents of the tax-payers should be obtained and proofs filed. Consents were obtained and proofs made and filed, the commissioner subscribed for stock, executed bonds, and delivered them to the company in payment for the subscription, complying with the requirements of the statutes in all respects, provided the consents and proofs were in' conformity therewith, which was ques-

Statement of case.

tioned. The legislature thereafter passed an act (chap. 402, Laws of 1864) declaring that where bonds have been issued by a commissioner of any town, and the railroad shall have been constructed through such town, the bonds shall be valid and binding upon the town without reference to the sufficiency of the proofs, and that the amount thereof shall be levied, raised and paid as provided in the original act. *Held*, that the legislature had authority to release the prior condition and to declare the assent of the commissioner binding upon the town; that said act was constitutional, and the bonds valid and binding.

*The People ex rel.* v. *Batchellor* (53 N. Y., 128) limited and distinguished, and the authorities in reference to town bonding, in aid of railroad companies, collated and discussed. *Town of Duanesburgh* v. *Jenkins* (46 Barb., 294) overruled.

The question upon a trial is, upon the facts in the case, what does the existing law pronounce as to the right of the parties? Where, therefore, a statute affecting questions involved in an action is passed after the commencement of the action, and there is no exception as to existing suits, the rule of law announced by the statute must be applied upon the trial of such action.

(Argued March 10, 1873; decided January term, 1874.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, affirming a judgment in favor of plaintiff entered upon the decision of the court at Special Term.

This action was brought to restrain the negotiation of certain bonds issued by defendant Jenkins, as railroad commissioner for plaintiff, to pay for subscription for stock of the Albany and Susquehanna Railroad Company.

The case appears twice in the Supreme Court reports; once on appeal from order dissolving a preliminary injunction (40 Barb., 534) and once on appeal from judgment in favor of defendants upon a former trial. (46 Barb., 294.)

The court found the following facts, among others:

That the defendant, Nathaniel C. Jenkins, commissioner of the town of Duanesburgh, under the act passed March 31st, 1856, "To authorize any town in the counties of Schenectady, Schoharie, Otsego, Delaware, Chenango or Broome, to subscribe to the capital stock of the Albany and Susquehanna Railroad Company," and the several acts amending the same,

claiming to act as such commissioner, filed on the 15th day of May, 1862, in the office of the clerk of the county of Schenectady, affidavits relative to the consent of certain tax-payers of the town of Duanesburgh, their heirs or legal representatives appearing upon the assessment roll of said town for the year 1855; that the commissioner or commissioners of said town, appointed or to be appointed for that purpose, should borrow, on the faith and credit of said town, the sum of $30,000, and to execute bonds therefor under their hands and seals, for the purposes and in pursuance of the aforesaid act, as amended, and also filed a duplicate of said affidavits in the office of the town clerk of the town of Duanesburgh. That the persons named in such affidavits did not form a majority of the resident tax-payers, their heirs, or legal representatives, residing in said town of Duanesburgh, representing a majority of the taxable property of said town, owned by, or taxed to, resident tax-payers of said town, appearing upon the assessment roll of that town, for the year 1861; but did form a majority of the resident tax-payers, their heirs, or legal representatives residing in said town, representing a majority of the taxable property of said town, owned by, or taxed to, resident tax-payers of said town, appearing upon the assessment roll of said town, for the year 1855 were defective in several specified particulars.

That said Jenkins, after the filing of the affidavits, and on the 15th of May, 1862, claiming to act as such commissioner, issued $30,000 of bonds upon the faith and credit of said town of Duanesburgh, executed under his hand and seal, and subscribed in the corporate name of the said town for the stock of the defendant, " The Albany and Susquehanna Railroad Company," to the amount of $30,000, and delivered the said bonds so issued to the said railroad company in payment of the said stock: which said stock the commissioner now holds ; that said bonds were so delivered to the said railroad company before the commencement of this action. That the said railroad company before the commencement of this action sold $15,000 of the said bonds at their par value, and that they

are in the hands of purchasers for value; that the balance of the said bonds ($15,000) were sold by the said railroad company since the commencement of this action at par value.

The railroad of said company was constructed through the town of Duanesburgh and has been in operation since the 15th day of September, 1863.

The conclusions of law of the court were as follows:

1. " The town of Duanesburgh is, in its corporate capacity, a proper party plaintiff to this action and can maintain this action."

2. " The procurement of the consent of a majority of resident tax-payers of the town of Duanesburgh, their heirs or personal representatives, representing a majority of the taxable property in said town of such resident tax-payers appearing upon the assessment roll of 1861, was a condition precedent to the creation and existence of the power of the commissioner and of his authority as agent of the town to issue the bonds in question and to subscribe for the stock of the Albany and Susquehanna Railroad Company, and to deliver the said bonds to said company in payment of the stock subscribed."

3. " That as such consent was not obtained, the defendant, Jenkins, did not become the agent of the town or acquire any authority to act for it or in its behalf in the premises."

4. " That the bonds and stock issued and subscribed by him, were issued and subscribed without any legal authority, and both subscription and bonds were and are absolutely void."

5. " The acts of 1863 and 1864 (chap. 18, Laws of 1863, and chap. 402, Laws of 1864), put in evidence on the trial, did not legalize either the subscription to stock or bonds, or make the bonds valid or obligatory upon the town."

6. " The affidavits filed in the offices of the clerks of the county of Schenectady and the town of Duanesburgh are so indefinitely framed, as not to furnish competent or sufficient proof that any of the persons named therein, in fact, subscribed a consent to the subscription of stock and the issue of the bonds or to either of them."

7. " The plaintiff is entitled to a judgment, declaring and

adjudging that such subscription of the defendant Jenkins to the stock of the Albany and Susquehanna Railroad Company and such issue of bonds by him are void, and that such bonds are absolutely void and not obligatory upon the town of Duanesburgh."

8. "And the plaintiff is also entitled to a judgment, that the defendant, Jenkins, and his successor or successors in office return the certificates of stock to the said railroad company."

9. "And that the defendant Jenkins and his successors in office, be restrained from subscribing for other stock in said railroad company, and from issuing other bonds in the corporate name of said town, and that both defendants be restrained from selling, assigning and transferring, or in any way disposing of any of said bonds heretofore issued."

To each of which conclusions defendants' counsel duly excepted. Judgment was perfected in accordance with said decision.

*N. C. Moak* for the appellants. The court was bound to give judgment according to the law in force at the time of the trial and when the judgment was pronounced. (*Moore v. Mausert*, 5 Lans., 173 ; affirmed in Ct. Apps. May 2, 1872 ; *Maryland* v. *B. and O. R. R. Co.*, 3 How. [U. S.], 534, 548–553 ; *Hartung* v. *People*, 22 N. Y., 96, 108, 109 ; 28 id., 400 ; *Shepherd* v. *People*, 25 id., 406 ; *People* v. *Croswell*, 3 J. Cas., 413 ; *Yeaton* v. *U. S.*, 5 Cranch, 283 ; *U. S.* v. *Preston*, 3 Pet., 57, 66, 67 ; *Pruyn* v. *Bliss*, 18 How. Pr., 334, and cases cited ; *Regina* v. *Inhabitants, etc.*, Dearsyl's C. Cas., 3.) The original act authorizing the issuing of the town bonds was complete, and took effect as a law when enacted by the legislature. (*Starin* v. *Town of Genoa*, 23 N. Y., 439 ; *Gould* v. *Town of Sterling*, id., 456 ; *Bk. of Rome* v. *Village of Rome*, 18 id., 38.) The acts of 1863 and 1864 made the affidavits filed conclusive evidence, and rendered the subscription and the bonds legal and valid. (Laws 1863, p. 30, § 1 ; Laws 1864, p. 911, § 2 ; *People* v. *Mitchell*, 35 N. Y., 551, 553 ; *Ft. Plain Bridge Co.* v. *Smith*, 30 id., 44 ;

*People* v. *Clarke*, 53 Barb., 178, 179.) The legislature has power to prescribe what shall be evidence of a particular fact, even where it affects the property of individuals. (*Hand* v. *Ballou*, 12 N. Y., 543; *Forbes* v. *Halsey*, 26 id., 63; *People* v. *Mitchell*, 35 id., 552; *Hickox* v. *Tallman*, 38 Barb., 608; *Neass* v. *Mercer*, 15 id., 318; *Stocking* v. *Hunt*, 3 Den., 274; *Thompson* v. *Lee County*, 3 Wal., 327; *Joy* v. *Thompson*, 1 Doug. [Mich.], 373; *Kingsley* v. *Cousins*, 47 Me., 91; *Welch* v. *Wadsworth*, 30 Conn., 149; *Curtis* v. *Leavitt*, 15 N. Y., 9; *Wood* v. *Kennedy*, 19 Ind., 68; *Foster* v. *Essex Bk.*, 16 Mass., 245; Cooley's Const. Lim. [2d ed.], 293, 294.) The power of the legislature to impose taxes is unlimited. (*Litchfield* v. *Vernon*, 41 N. Y., 123, 134, 141; *Litchfield* v. *McComber*, 42 Barb., 288, 289; *Howell* v. *City of Buffalo*, 37 N. Y., 267, 270–274.) The building of the railroad was such a public improvement that the legislature had a right to tax the town toward its construction. (*Bk. of Rome* v. *Village of Rome*, 18 N. Y., 38; *Matter of Trustees*, 31 id., 574; *Matter of Townsend*, 39 id., 173; *Litchfield* v. *Vernon*, 41 id., 123, 134, 141; *Grant* v. *Courter*, 24 Barb., 232; *Clark* v. *City of Rochester*, id., 494; *Litchfield* v. *McComber*, 42 id., 288; *Bloodgood* v. *R. R. Co.*, 18 Wend., 9.) It could do this with or without a popular vote, and could provide that no defect should invalidate proceedings already attempted. (*Thompson* v. *Lee Co.*, 3 Wal., 327; *People* v. *Mitchell*, 35 N. Y., 552; *Matter of Trustees*, 31 id., 574; *Campbell* v. *City*, 5 Wal., 203.) The statute authorizing the town in its corporate capacity to issue its bonds and with them purchase and hold stock of the railroad company, even though it contemplates, in a contingency, taxation to reimburse the debt, is valid and constitutional. (*Howell* v. *City of Buffalo*, 37 N. Y., 267–269; *Grant* v. *Courter*, 24 Barb., 232; *People* v. *Lawrence*, 36 id., 177; *Benson* v. *Mayor, etc., of Albany*, 24 id., 252; *Bk. of Rome* v. *Village of Rome*, 18 N. Y., 38.) The clause of the Constitution which prohibits the taking of private property for public purposes without compensation, applies only to the right of eminent domain. (*Howell* v.

*City of Buffalo*, 37 N. Y., 267–269; *People* v. *Griffin*, 4 id., 419; *Darlington* v. *Mayor*, 31 id., 190; *Gilman* v. *City*, 2 Black, 513.) The original statute, by providing that the bonds should not be issued until a specified number of tax-payers should consent in writing, did not constitute a contract with the town. (*Town of Guilford* v. *Suprs. of Chenango*, 13 N. Y., 143; *Brewster* v. *City of Syracuse*, 19 id., 116; *Schen. City Bk.* v. *Davis*, 16 Barb., 188; *Schenley* v. *Comm.*, 36 Penn. St., 29; *Savings Bk.* v. *Allen*, 28 Conn., 97; *Welch* v. *Silliman*, 2 Hill, 491.) The statute of 1864 declaring valid the bonds, without reference to the compliance with the condition mentioned, does not impair any vested right. (*People* v. *Roper*, 35 N. Y., 633; *Ohio L. Ins. Co.* v. *Debolt*, 16 How. [U. S.], 435–438; *Aspinwall* v. *Comrs.*, 22 id., 364, 376–379; *Butler* v. *Penn.*, 10 id., 416; *East Hartford* v. *Hart. Bridge Co.*, id., 511; *State* v. *B. and O. R. R. Co.*, 3 id., 534; *Gilman* v. *City*, 2 Black, 510.) Plaintiff cannot maintain this action. (*Town of Guildford* v. *Suprs. of Chenango*, 13 N. Y., 143, 147; *Lorillard* v. *Town of Monroe*, 11 id., 394, 395; *Roosevelt* v. *Draper*, 23 id., 318; *Wetmore* v. *Story*, 22 Barb., 414.) The act was not unconstitutional because it was local. (41 N. Y., 123, 139; 19 id., 116; 8 id., 241; 36 Barb., 189; 31 id., 572; 19 id., 84.) The commissioner in determining whether the requisite assent had been given, and making his affidavit, acted judicially, and his judicial determination can only be reviewed by *certiorari*. (*Diefendorf* v. *Shutts*, MS. Op. Sept. Gen. Term, 1861; *Pierce* v. *Wright*, MS. Op. June Gen. Term, 1872; *Corwin* v. *Campbell*, 43 N. Y., 457; *Hyatt* v. *Bates*, 40 id., 164; *Hayward* v. *City of Buffalo*, 14 id., 534–539; *People* v. *Zeyst*, 23 id., 140.) A municipal corporation is as much bound by the acts of its agents as any corporation or person. (*Meyer* v. *City of Muscatine*, 1 Wal., 393; *Van Hostrup* v. *Madison City*, id., 297.)

*Amasa J. Parker* for the respondent. The facts found at the circuit cannot be questioned in this court. (*Marshall* v.

*Smith*, 20 N. Y., 251; *Cady* v. *Allen*, 18 id., 573; *Marco* v. *Liverpool Co.*, 35 id., 664; *Farnham* v. *Hotchkiss*, 2 Keyes, 9.) The bonds issued by Jenkins and his stock subscription were void, because his authority to bind the town depended, in its creation, upon conditions precedent which were never performed. (*Starin* v. *Town of Genoa*, 23 N. Y., 439, 465; *People* v. *Mead*, 24 id., 114; *Marsh* v. *Fuller*, 10 Wal., 676; *Floyd Acceptances*, 7 id., 676; *F. & M. Bk.* v. *B. & D. Bk.*, 16 N. Y., 125, 139.) The acts of 1863 and 1864 will not be construed or applied so as to change the legal rights of the plaintiff. (4 Den., 374; 3 Barb., 310; 7 J. R., 496; 10 Wend., 365; 23 id., 433.) If the bonds are valid in the hands of a *bona fide* holder, plaintiff was entitled to the injunction and the relief granted. (*State of Illinois* v. *Delafield*, 8 Paige, 527; *Marquat* v. *Marquat*, 12 N. Y., 336; *Peale* v. *Emery*, 20 id., 62.) The General Term was right in its decision that the assessment roll of 1861 was the last assessment roll within the meaning of the act. (*People* v. *Hulburt*, 46 N. Y., 110, 115; *People* v. *Smith*, 45 id., 772; *People* v. *Knowles*, 47 id., 415; *People* v. *Hughitt*, 5 Lans., 89.)

JOHNSON, C. The Court of Appeals in *The People* v. *Mitchell* (35 N. Y., 551), gave a construction to the two acts chapter 18 of the Laws of 1863, and chapter 402 of the Laws of 1864, and although some members of the court dissented, an authoritative majority appears to have concurred in the views expressed by Judge PORTER. He says: "Our clear conclusion is, that it was the intention of the confirmatory acts to make the affidavits of consent then on file in the clerks' offices of the respective towns and counties, however defective in 'form or substance,' valid and conclusive proof in all courts and for all purposes, to authorize in and uphold the respective subscriptions to the stock, and the issue of bonds specified in such proof, for such towns respectively." In the case then before the court the bonds had not been issued, and the question was upon sustaining a mandamus to the commissioners to subscribe for the stock and issue the bonds. In

the present case it appears that before the bringing of the suit, all the bonds in question had been issued and delivered to the railroad company at par, in payment for the subscription to its stock, and that one-half of them had been transferred, at par, to holders, in good faith; that the rest were held by the company when the suit was commenced, and were afterward, and before the trial, sold at par. The road itself, prior to September, 1863, had been constructed through the town of Duanesburgh, and has since been regularly operated. These facts bring the case within the operation of the last clause of section 1 of the act of 1864, before cited. The language of this is, "and when bonds have been issued by the commissioner or commissioners of any town and the said railroad shall have been constructed through such town, the bonds shall be valid and binding on said towns." This language is not diminished in its scope and meaning by the clause which follows in immediate connection and in the same sentence — " without reference to the form or sufficiency of such affidavits." The plain purpose of the phrase is to leave no room for any argument that the rule of the statute was in any degree dependent on the contents of the affidavits. It was argued from the introductory words of the section, " In any case where the commissioner or commissioners of any town authorized to subscribe to the stock of the Albany and Susquehanna Railroad Company shall have filed " affidavits of consent, that there was implied in this use of the term, " authorized," the necessity of proving, as matter of fact, all the circumstances which by former statutes were necessary to warrant a subscription. This is not the true meaning and force of the expression. A reference to the earlier statutes on the subject, chapter 64 of 1856, chapter 401 of 1857, and chapter 384 of 1859, shows that the language refers to towns authorized to subscribe by the statutes : these were all the towns in certain counties specified in the act of 1856, which authorized any town in Schoharie and other named counties to subscribe for stock. The phrase has no other force except to fix the towns referred to.

If this be the true intent of the statute, it remains only to ascertain if the legislature had power to enact it, and then, if it is to be applied to an action commenced before its passage. The authority of the legislature to enable towns and other civil divisions of the State to subscribe for stock and issue bonds in aid of railroad companies is established by numerous decisions. (*Bank of Rome* v. *Village of Rome*, 18 N. Y., 38; S. C., 19 id., 20; and *People* v. *Mitchell*, before cited; *Starin* v. *Genoa*, 23 N. Y., 439; *Gould* v. *Sterling*, 23 id., 456; *Grant* v. *Courter*, 24 Barb., 232; *Benson* v. *Mayor of Albany*, 24 id., 248; and *Clarke* v. *City of Rochester*, 24 id., 446.) The decisions in 24 Barbour and in 18 and 19 New York, were made under circumstances calculated to excite the utmost attention and care on the part of the judges concerned in making them, and to attract the examination not only of the profession but of the public. They were preceded by the case of *Clark* v. *Rochester* (13 How. Pr., 204), at Special Term in 1856, in which Justice W. F. ALLEN, in a very learned and able opinion, maintained with much force of argument that the legislature could not confer upon a municipal corporation the power to subscribe for, or hold stocks in, or issue bonds in payment for stocks in a railroad corporation. Such legislation, he argued, was not within the scope of the legislative power, and was forbidden by the whole scope and spirit of the Constitution, as well as by the just interpretation of particular clauses of that instrument, and especially, that it could not be supported under the taxing power. Upon these grounds, he gave judgment against the validity of the legislation in question. The doctrine thus put forward was soon brought under further judicial examination. In *Grant* v. *Courter*, above cited, Justice W. B. WRIGHT, delivering the opinion of the General Term in the third district, then consisting of himself and Justices HARRIS and GOULD, after an able discussion of the principles involved, gave judgment against the views of Justice ALLEN. This was in April, 1857. In May, Justice DEODATUS WRIGHT, in *Benson* v. *Albany*, above cited, at Special Term, after a very careful and critical

examination of the decision in *Clarke* v. *Rochester*, taking up
in detail the arguments on which it was rested, and presenting
the answers to them with great clearness and force, rendered
a decision adverse to the views on which *Clarke* v. *Rochester*
had been decided.    Shortly after, and in June of the same
year, the case of *Clarke* v. *Rochester* (24 Barb., 446), came on
appeal from the decision at Special Term, before the General
Term in the seventh district, then consisting of Justices T. A.
JOHNSON, E. DARWIN SMITH, T. R. STRONG and WELLES.
Elaborate opinions were given by Justices SMITH and STRONG,
WELLES, J., agreeing in that of Justice SMITH, and also by
JOHNSON, J., expressing himself strongly in affirmation of the
power of the legislature, but feeling himself constrained by
the interpretation he put on the case of *Barto* v. *Himrod*,
in reference to the submission of the question to the vote of
the people, to dissent from the judgment of reversal, which
his brethren concurred in pronouncing.    The opinion of
Justice SMITH is a very full and careful review and reply to
the arguments adduced by Justice ALLEN in support of his
original decision, and calls attention to a large number of
cases, both in this and in other States, in which similar adju-
dications had been made.    This being the state of the deci-
sions on the questions involved, the case of the *Bank
of Rome* v. *The Village of Rome* (18 N. Y., 38) was heard
in the Court of Appeals and decided in the year 1858.    The
court determined that the Constitution does not, in terms, or
by necessary intendment, restrain the legislature from con-
ferring upon municipal authorities the power to subscribe to
the stock of a railroad corporation, and to raise the necessary
funds by taxation.    The decision in this case was recognized
in a case of the same title decided in the next year (19 N. Y.
20), and has since been frequently held to be the law, and
completely acquiesced in by the courts.    When, in 1864, the
case of *Clarke* v. *The City of Rochester* came before the Court
of Appeals, after the new trial had been had, DENIO, Ch. J.,
giving the opinion which prevailed, adverted to the fact that,
after the commencement of the action and since the judg-

ment appealed from, some of the questions discussed in the Supreme Court had been decided in other cases in the Court of Appeals.   He adds: " The money which was to be raised by the city of Rochester, was by the statutory provisions which are drawn in question to be applied in promoting the construction of a railroad terminating in that city, by means of the purchase of shares of stock in the railroad corporation.   And it was considered by some of the judges that this was a power which, from its nature, and on account of certain constitutional provisions, could not be exercised by a municipal corporation, even with the sanction of the legislature.   But it has been determined otherwise by this court in some cases to which reference will presently be made, and the point is, consequently, no longer insisted on by the counsel for the plaintiffs." (28 N. Y., 605.)

The substantial grounds of these decisions were, that the legislative power of the State was limited only by the restraints expressed in the Constitution, and that none of those restraints were infringed by the legislation in question. The question then arises, whether there is any distinction in principle between a law authorizing a town to subscribe for shares in a railroad and to issue bonds in payment therefor, and a law directing the same thing to be done.   That, in the absence of special constitutional restraints the State itself may build and run a railroad, or may take shares in it is obvious.   Indeed, in the infancy of such enterprises, the grant of the right of eminent domain to railroad companies was sustained upon the idea that railroads were, in their own nature, public undertakings and of public use, as other highways.   It was considered a mere prudential question, to be decided by the State itself, whether it would construct them as public works, by the State officers, or commit that power to private individuals, who should do the work and derive their remuneration from the profits of the enterprise. With these views the State made loans and subsidies in aid of such undertakings; and in the earlier laws for the incorporation of railroad companies, provided for the assumption

by the State of the whole enterprise, upon terms of payment prescribed in the acts of incorporation. Of this the act incorporating the Utica and Schenectady Railroad Company (Laws of 1833, p. 462) is an illustration. The whole machinery of incorporation, of stock and stockholders, was regarded as a means of accomplishing a public work designed for the public use and convenience. This being so, it is not perceived how the particular agency employed to effect such a work can change its character.

A town is, as to the powers it shall possess and the functions it shall perform, the creature of the legislative will. No reason is perceived, so far as the town itself is concerned, considered apart from its inhabitants, why the legislature might not impose upon it, as one of its functions, the duty of keeping in repair or of operating a railroad within its borders. I speak only of the question of power, conceding that its exercise would be in the highest degree objectionable and inexpedient. The power to impose special burdens on localities and to determine the cases in which it is suitable to impose them, belongs to the law making power. In *Thomas* v. *Leland* (24 Wend., 65) the power was exercised by imposing a tax on Utica to pay for a change of the termination of the Chenango canal, in respect to which certain of its citizens had become voluntarily bound to the State to pay the expense. More recently, in *Guilford* v. *Chenango County* (13 N. Y., 143), where a burden was imposed by law upon the town of Guilford, the court upholding the action of the legislature, declares that "independently of express constitutional restrictions, it can make appropriations of money whenever the public well-being requires or will be promoted by it; and it is the judge of what is for the public good. It can, moreover, under the power to levy taxes, apportion the public burdens among all the tax-paying citizens of the State, or among those of a particular section or political division." Now, as it is obvious that all the property of a town, as an artificial being, is public property, and must usually have proceeded from the exercise of the power of taxation; and as the

private rights of individuals residing in the town can only be affected through the exercise of the power of taxation, it follows that the substantial power of the legislature, through the power of taxation, is broad enough to sustain the requirement to a town to aid in the construction of a railroad in the construction of which, in the judgment of the legislature, it has a public interest. And if it may do this directly, by the imposition of a tax and the direct and immediate employment of the money raised, it is not perceived how the issuing of bonds with only the contingency of taxation to follow can be beyond the legislative power; nor how the more remote possibility of becoming chargeable by reason of holding stock can alter the case.

The real ground of objection to such legislation is its consequence to the individuals resident in the towns affected. Yet it can be readily shown that the whole principle involved is covered by the adjudications in the *Bank of Rome* v. *The Village of Rome*, and the other cases cited in that connection. In the law in question in that case (and such has usually been the provision of statutes giving town aid to railroads) power was given to a majority to determine whether those who compose it, and the minority who dissent, shall alike be bound through the liability of their property to taxation, to contribute to such enterprises. As the majority in any municipal community has no such inherent power to bind the minority and require them to bear taxation for a purpose they disapprove, it is evident that the power thus exercised is derived from the grant of the legislature. Thus granting power, the legislature binds the minority without its consent; and, on the same principle, it may make the duty imperative on both majority and minority in any locality to subscribe for stock, to issue bonds, and to pay taxes levied for the purpose of constructing a railroad. For, if it may bind one citizen without his consent, it may bind all; the rights and immunities of all being no more beyond the legislative power than those of each individual. It therefore rests in the legislative discretion to impose any conditions it may think the public

welfare requires to the exercise of such a power. Nor, when it has once acted, has it parted with any portion of its authority. It may always and at any time do what it might have done in the beginning. It may take away any conditions and make the duty absolute at once, or impose other and new ones at its pleasure.

It is not necessary, however, to go to this extent in the case before us. How the consent of a town shall be given is clearly in the discretion of the legislature. It has often given it to the majority in number and amount of tax-payers; it may give it to the supervisor, or any other officer, since the whole power is of its creation, and since the consent of all the tax-payers or inhabitants but one is powerless to bind the single dissentient, except upon the theory of the complete and plenary power of the legislature in the premises. In this case a commissioner has been regularly appointed under the statute, by whom bonds were to be issued and stock subscribed for, provided certain consents were obtained and proofs filed according to the requirements of the several acts upon the subject. Consents were obtained and proofs were made and filed which are now, on the one side, claimed to be, and on the other are denied to be, in conformity to the law. The commissioner, meanwhile, executed the bonds, subscribed for stock and delivered the bonds to the company in payment of the subscription; complying with the requirements of the statute in all respects, if the requisite consents had been given and proofs made. The only officer of the town who had any duty in the premises, acted by giving the bonds; and the legislature, seeing the whole matter, released the conditions which it had imposed, and declared his assent binding upon the town, if the bonds had been issued and the road had been built, and the bonds in that case obligatory. As it might have authorized action in this way and on these conditions, by the town, originally, I see no objections to giving effect to its ratification of the action of the town and holding its consent, thus expressed, effectual.

A question is made in the next place, upon the ground that

the confirmatory statute of 1864 ought not to affect the rights of the parties to this suit, it having been commenced before the passage of that act. But the question at the trial was, and always is, upon the facts of the case what does the existing law pronounce as to the rights of the parties. There can be no doubt that it was the intention of the legislature that the statute should operate to cure existing defects in the mode of executing the authority previously granted. Indeed, that is the plain and declared purpose of the provisions of the statute. There is no exception of existing suits as often is practiced when such is the legislative purpose. The declaration is broad and general, the bonds shall be valid and binding on the town, provided only they have been issued by the commissioner and the road has been constructed through the town. The facts existing, the rule of law announced by the statute is clear, and, I know of no authority that exists in a court of justice to pronounce a judgment which conflicts with the existing law.

At the June Term of the Commission, and before the decision by the Court of Appeals in *The People* v. *Batchellor*, we were prepared to give judgment in this case in accordance with what has now been said. The decision mentioned, imposed upon us the duty of considering whether it conflicted with our views, and of conforming our judgment to that of the court, in case such conflict existed. But, upon examination, we find that the cases are fairly distinguishable from each other. In that case, the application was for a mandamus to compel a town to become a stockholder in a railroad and to issue its bonds in payment of the subscription price of the stock. No subscription had been made, no bonds had been issued, nor had any tax-payer of the town nor any town board, or officer, or elector of the town, ever assented, as the court held, to the issuing of bonds or the subscribing for stock. Under this state of facts, the court, not professing to overrule any of the previous decisions of its predecessors, decided that a mandamus ought not to issue to compel the execution of bonds and a subscription to the stock, although a statute directed

that these acts should be done. It is true that the argument of the opinion delivered, which was assented to by only four of the judges, does deny the power of the legislature to compel a town to take stock in a railroad company without its assent ; yet, it admits the competency of the town by its own assent and that of a majority of some sort, and with the authority of the legislature to do these very acts. And I have endeavored to show that the admission is fatal to the argument, and that in either case, the validity of the act, or the obligation to perform it, depends upon the power of the legislature. The judgment of the court is all that binds it as a precedent, and it would be within the rightful power of the court at any time to limit the opinion to the point adjudged, upon the facts existing in the case. The same right belongs to us, and ought to be exercised where we are of opinion that the rules of law require its exercise. The case before us is essentially different, in facts material to the rights of the parties, from that decided in the Court of Appeals. Here the subscription has been made, and the bonds have been issued, by the consent and act, at least of that representative of the town, who is pointed out by the statute as the person who is to execute the bonds and make the subscription. This action of the commissioner was, consequent upon the consents of tax-payers given, and proofs thereof filed in professed compliance with the terms of enabling acts, and consenting to the very act of giving bonds, which has taken place. Difficulties and litigation having arisen as to the exact compliance with the terms of the enabling acts, the legislature at length has interposed and declared that when the road has been built and the bonds have been issued the bonds shall be binding on the town, without reference to defects in the proofs and affidavits. It seems to me that this is a very different question from that presented to the Court of Appeals. The one is merely remedial of defects occurring in the exercise of a power legitimately conferred, and making certain facts conclusive evidence of the proper exercise of the power. The other imposes, or attempts to impose, an obligation without the consent and

against the will of the party to be bound, when no act of performance has taken place.

The measure of consent, on the part of the town and its tax-payers or electors, was fixable at the will of the legislature originally. If not, then the whole power must be denied, for the people of a locality cannot confer power upon the legislature. And if it originally rested with the legislature to fix the terms on which the towns might act, the same power will suffice to remit a part of the conditions imposed, or to heal any defects which may have occurred in the performance by the towns of those conditions. Such was the decision of the Court of Appeals in *The People* v. *Mitchell* (35 N. Y., 552), before referred to, and which the later decision of the court does not profess to overrule. In this case the proper officer of the town has acted, the bonds have been issued and the stock subscribed for. The objection is that the proof of preliminary consents by tax-payers is defective. The action of the legislature is, in my judgment, sufficient to heal this defect and to sanction the action of the town commissioner in bonding the town, the whole consideration to the town having been received in the completion of the road and the issuing of the stock for its benefit.

It is not inappropriate in this connection to say that the questions involved are not peculiar to our jurisprudence, and do not depend on the special language of our Constitution, but rather upon views in respect to governmental power. If a limit is imposed, founded on arguments drawn from the nature of legislative authority, this limit is one of judicial creation and definition, and the result must be to subject the power of legislation to the control of the judiciary, except where the legislative power is definitely affirmed in the Constitution itself. That the people, in this State at least, have never been willing to intrust such a power to the judiciary, and that they in fact have not done so, I am confident.

In many of the other States of the Union similar questions arising under Constitutions of nearly the same tenor as our own, and certainly the same in substance, have been determ-

ined in favor of the legislative power. Their number is so great and their purport so uniform that reference to particular cases is not necessary. Most of them are referred to in 2 Redfield on Railways (4th ed., 395–405). The course of decision in the Supreme Court of the United States has been in the same direction, and the three cases of *St. Joseph Township* v. *Rogers* (16 Wall., 644), *Railroad Co.* v. *Otoe* (id., 667) and *Olcott* v. *The Supervisors* (id., 678) cover all the ground involved in this case. It is true that on these questions the decisions of that court are not authoritative in the sense that it has not, in all these cases, the right of direct review. But it is equally true that the inquiry in all these cases turns not upon the construction of particular constitutional clauses, but upon the general question of the just limits of legislative and judicial power; and that the agreement of that court with the great current of judicial decision of the different States is strong and persuasive evidence that the doctrines in which they all concur cannot be so far contrary to the fundamental notions of justice as to require us, in the absence of any express constitutional provision, to deny to the legislature of this State the same authority, the exercise of which in other States they sanction.

I am, therefore, of opinion that the judgment below ought to be reversed and a new trial ordered, costs to abide the event.

All concur.

Judgment reversed.